**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Charles Strow, individually and on behalf of all others similarly situated, | 1:21-cv-05104 |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| B&G Foods, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.     B&G Foods, Inc. ("defendant") manufactures, labels, markets, and sells "Butter – No-Stick Spray" without any butter under its Crisco brand ("Product").



2.      The largest word is "Butter," with a sizzling pat of butter atop pancakes in a skillet, causing consumers to expect the Product contains butter.

3.      However, the Product contains no butter.

4.      Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food and beverages. *See* Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1) (a food is misbranded if "its labeling is false or misleading in any particular."); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal [food labeling] regulation automatically adopted…takes effect in this State on the date it becomes effective as a Federal regulation.").

5.      The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

## I.      CONSUMERS VALUE BUTTER

6.      Butter is the only food with a standard of identity codified by Congress, defined as:

> the food product usually known as butter, and which is made exclusively from milk or cream, or both, with or without common salt, and with or without additional coloring matter, and containing not less than 80 per centum by weight of milk fat, all tolerances having been allowed for.

21 U.S.C. § 321a

7.      Congress established a definition for "butter" because consumers value real dairy foods.

8.      In response to the success of real dairy foods, unscrupulous competitors developed

2

synthetic, butter-like products made from plant and animal fats, known as vegetable oils or margarine.

9.    Manufacturers have continually sought to sell foods purporting to contain butter but containing only lower-quality and cheaper vegetable oils.

10.    Long established FDA guidance reflects consumer appreciation for butter and dairy.

11.    The FDA recommends that where a food is labeled "Butter _____" or uses the word "butter" in conjunction with its name, reasonable consumers will expect that whenever butter could be used in a product, it would be, instead of butter substitutes.[1]

12.    For numerous reasons, consumers prefer butter to its alternatives.

13.    First, butter does not contain the trans fats of vegetable oils.

14.    Second, butter is natural, made by churning cow's milk.

15.    Butter substitutes, like vegetable oils, are synthetic.

16.    Highly refined vegetable oils are subjected to hydrogenation and interesterification, in the presence of chemical catalysts such as nickel and cadmium.

17.    Third, butter is rich in nutrients like calcium and Vitamins A and D.

18.    Fourth, butter has a creamy, sweet taste.

19.    While vegetable oils are typically "refined, bleached and deodorized," to supposedly provide a neutral taste, the reality is different.

20.    Vegetable oils are highly susceptible to oxidation.

21.    The result is "reversion" of the flavor back to that of the original crude oil before it

---

[1] Compliance Policy Guide ("CPG"), Sec 505.200, "Butter" Featured in Product Name, Center for Food Safety and Applied Nutrition, Office of Regulatory Affairs, March 1988 ("If the product contains both butter and shortening but a sufficient amount of butter to give a characteristic butter flavor to the product, an appropriate name would be 'butter flavored _____'… if the product contains any artificial butter flavor it would have to be labeled in compliance with 21 CFR 101.22(i)(2).").

3

was processed.

22.    This flavor is described as "beany, ""powdery" or "fishy."

23.    Vegetable oils detract from any authentic butter taste.

24.    Though vegetable oils may be described as "refined, bleached and deodorized," and purportedly do not affect a food's taste, the reality is different.

25.    To describe a food's taste as "buttery" is a compliment, which refers to a light and fluffy texture, while vegetable oils contribute to a waxy mouthfeel which leaves an aftertaste.

26.    In cooking, butter creates a flaky texture that is softer and less dense than using vegetable oils, because butter is solid at room temperature.

## II.    "BUTTER – NO STICK SPRAY" IS MISLEADING BECAUSE IT LACKS BUTTER

27.    The name "Butter – No-Stick Spray" is misleading because the Product does not contain any butter, as shown on the ingredient list.



**INGREDIENTS:** CANOLA OIL*, SOY LECITHIN, NATURAL AND ARTIFICIAL FLAVOR, DIMETHYL SILICONE (FOR ANTI- FOAMING), BETA CAROTENE (COLOR), AND PROPELLANT

28.    Given the absence of any butter, the Product is required to be identified as an artificially butter flavored no-stick spray.

29.    While the front label  contains a statement of "natural and artificial flavor," this is insufficient to disclose to consumers the Product has no butter.

4

30.     First, the statement is smaller than what is required by FDA regulations.

31.     Second, the font does not contrast with the background color, making it difficult to notice, and if noticed, to read.

32.     Third, the "natural and artificial flavor" statement is not linked to the Product's characterizing flavor, which appears to be butter.

33.     Consumers are not told by this statement the Product does not contain butter, especially in light of the pat of butter in the skillet in the center of the label.

34.     Fourth, the Product contains beta carotene, to make it look like the golden hue of butter.

35.     This tactic is as old as butter's competitors, who dyed margarine yellow, so as to confuse the harried consumer at the local dry goods store.

## III.   THE PRODUCT IS AN IMITATION OF BUTTER

36.     The Product is marketed as an alternative to butter in the form of a no-stick spray.

37.     Consumers are misled because the front label fails to disclose – as required by law – that the purported butter spray is an imitation because "it is a substitute for and resembles another food [butter] but is nutritionally inferior to that food." 21 C.F.R. § 101.3(e)(1).

38.     Nutritional inferiority includes a reduction in a measurable amount of 2% or more of any vitamin or mineral listed under 101.9(c)(9). *See* 21 C.F.R. § 101.3(e)(4)(ii) ("Nutritional inferiority").

39.     According to the Nutrition Facts, the Product has no calcium, compared to a serving size of butter, which has three percent of the daily recommended value ("DRV") of calcium.

40.     The Product has none of the ingredients required by the standard of identity for butter but has similar physical properties to butter such as being used to prevent food from sticking to a

pan during cooking.

41.    Consumers are misled because Defendant sells an olive oil no-stick spray, which contains olive oil.

42.    Consumers are misled because competitor products are prominently identified as "butter flavored," and disclose they are flavored by natural and artificial flavors. *See* 21 C.F.R. § 101.22.

## IV.    MISLEADING SERVING SIZE COMPARISON TO BUTTER

43.    The Product misleads consumers with respect to the nutrition information relative to butter.

44.    The label compares the fat and calories for a serving of butter and margarine to a serving of the Product.

45.    This is a misleading as the serving sizes are different.

46.    Butter and margarine have serving sizes of one tablespoon (14 grams), while the serving size for the no-stick spray is 1/3 second spray (.25 g).

47.    Since the Product is marketed as a butter substitute, the serving size should also reflect more than the limited "pan greasing" application.

## V.    CONCLUSION

48.    Whether a product contains the ingredient identified on a front label is basic information consumers rely on when making decisions at the store.

49.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

50.    The value of the Product that plaintiff purchased was materially less than its value as

represented by defendant.

51.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

52.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

53.    The Product is sold for a price premium compared to other similar products, no less than approximately $3.49 per 6 oz, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

54.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

55.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

56.    Plaintiff Charles Strow is a citizen of Illinois.

57.    Defendant B&G Foods Inc., is a Delaware corporation with a principal place of business in Parsippany, Morris County, New Jersey.

58.    Plaintiff and defendant are citizens of different states.

59.    Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

60.    Venue is in the Eastern Division because plaintiff resides in DuPage County, which is where the events giving rise to the present claims occurred.

<u>Parties</u>

61.    Plaintiff Charles Strow is a citizen of Addison, DuPage County, Illinois.

62.    Defendant B&G Foods Inc., is a Delaware corporation with a principal place of business in Parsippany, Morris County, New Jersey.

63.    Defendant is an American food manufacturer whose products include shelf-stable and frozen vegetables, condiments, and shortenings.

64.    The Product is sold in thousands stores of all kinds – convenience stores, drug stores, grocery stores, big box stores, wholesale clubs and online.

65.    The Crisco brand has been established for a hundred years and has always sought to emulate butter.

66.    Crisco was originally made with cottonseed oil and has, since its inception, sought to replace butter in American kitchens.

67.    However, Americans, and their representatives, implemented regulations and laws to prevent the replacement of valued foods like dairy and butter with those of lesser value, made from vegetable oils.

68.    Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Jewel-Osco, 140 West Lake Street Addison IL 60101, between July and August 2021, among other times.

69.    Plaintiff bought the Product because he expected it contained butter and not its synthetic substitutes.

70.    Plaintiff did not expect the Product to contain no butter.

71.    Plaintiff bought the Product at or exceeding the above-referenced price.

72.    Plaintiff relied on the representations identified here.

8

73.     Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

74.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

75.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

76.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

<u>Class Allegations</u>

77.     Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[2]

78.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

79.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

80.     Plaintiff is an adequate representative because his interests do not conflict with other

---

[2] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

members.

81.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

82.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

83.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

84.    Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

85.    Plaintiff incorporates by reference all preceding paragraphs.

86.    Plaintiff and class members desired to purchase a product that contained butter and not its synthetic substitutes.

87.    Defendant's false and deceptive representations and omissions about the relative and absolute amount of butter was material in that it is likely to influence consumer purchasing decisions.

88.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

89.    Plaintiff relied on the representations and omissions.

90.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

91. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

92. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

93. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

94. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

95. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained butter and not its synthetic substitutes.

96. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

97. This duty is based on Defendant's outsized role in the market for this type of product.

98. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

99. Defendant received notice and should have been aware of these issues due to

11

complaints by regulators, competitors, and consumers, to its main offices.

100. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

101. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

102. Defendant had a duty to truthfully represent the Product, which it breached.

103. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

104. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a leader in shortenings and cooking ingredients.

105. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

106. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

107. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained butter and not its synthetic substitutes.

108. Defendant possesses specialized knowledge regarding the consumer expectation that this Product contained butter.

109. Moreover, the records Defendant is required to maintain provide it with actual and/or

constructive knowledge of the falsity of the representations.

110. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

111. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: November 12, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

14