UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Charles Strow, individually and on behalf of all others similarly situated, | 1:21-cv-05104 |
| Plaintiff, | |
| - against - | Hon. Steven C. Seeger |
| B&G Foods, Inc., | |
| Defendant | |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Complaint

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 1

LEGAL STANDARDS .................................................................................................................. 4

ARGUMENT .................................................................................................................................. 4

I. PLAINTIFF PURCHASED THE PRODUCT AT ISSUE .................................................. 4

II. PRICE PREMIUM ALLEGATIONS ESTABLISH ECONOMIC INJURY ..................... 6

III. PLAINTIFF WAS NOT RECRUITED OR SOLICITED .................................................. 8

IV. PLAINTIFF WAS NOT AFFORDED OPPORTUNITY TO REHABILITATE DEPOSITION TESTIMONY ............................................................. 11

V. "SHAM-AFFIDAVIT" RULE IS NOT APPLICABLE .................................................... 11

VI. ATTACKS TO PLAINTIFF'S COUNSEL ARE BETTER SUITED TO MOTION FOR CLASS CERTIFICATION ......................................................................... 13

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) .................................................................................................. 14

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) .................................................................................................. 14

*Babrocky v. Jewel Food Co.*,
 773 F.2d 857 (7th Cir. 1985) .................................................................................... 12

*Bell v. Publix Super Mkts., Inc.*,
 982 F.3d 468 (7th Cir. 2020) ...................................................................................... 1

*Biffar v. Pinnacle Foods Grp., LLC*,
 No. 16-cv-0873, 2016 WL 7429130 (S.D. Ill. Dec. 22, 2016) .................................... 7

*Castro v. DeVry Univ., Inc.*,
 786 F.3d 559 (7th Cir. 2015) .................................................................................... 13

*Choudhry v. Jenkins*,
 559 F.2d 1085 (7th Cir. 1977) .................................................................................. 13

*Davis v. G.N. Mortg. Corp.*,
 396 F.3d 869 (7th Cir. 2005) ...................................................................................... 5

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) ............................................................. 5

*Ezekiel v. Michel*,
 66 F.3d 894 (7th Cir. 1995) .................................................................................. 4, 11

*In re Aqua Dots Prods. Liab. Litig.*,
 654 F.3d 748 (7th Cir. 2011) ...................................................................................... 6

*James v. Hale*,
 959 F.3d 307 (7th Cir. 2020) .............................................................................. 12, 13

*Kennedy v. Allied Mut. Ins. Co.*,
 952 F.2d 262 (9th Cir. 1991) .................................................................................... 13

*McCann v. Ogle Cnty.*,
 909 F.3d 881 (7th Cir. 2018) .................................................................................... 13

*McDonnell v. Nature's Way Prods., LLC*,
   No. 16-cv-5011, 2017 WL 1149336 (N.D. Ill. Mar. 28, 2017) .............................................. 7

*People v. Ortiz*,
   207 Ill. App. 3d 1 (1990) ..................................................................................................... 11

*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ................................................................................................... 13

*REXA, Inc. v. Chester*,
   42 F.4th 652 (7th Cir. 2022), reh'g denied, No. 20-2953, 2022 WL 3724306
   (7th Cir. Aug. 29, 2022) ........................................................................................................ 5

*Russell v. Acme-Evans Co.*,
   51 F.3d 64 (7th Cir. 1995) ................................................................................................... 12

*Sabo v. Wellpet, LLC*,
   282 F. Supp. 3d 1040 (N.D. Ill. 2017) .................................................................................. 7

*Shepherd v. Slater Steels Corp.*, ?
   168 F.3d 998 (7th Cir. 1999) ............................................................................................... 11

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................................................................................... 5

*Strow v. B&G Foods, Inc.*,
   No. 21-cv-5104, 2022 WL 4608948 (N.D. Ill. Sept. 30, 2022) ............................................. 1

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................................ 13

**Statutes**

815 ILCS 505/1 .............................................................................................................................. 1

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................................. 4

Fed. R. Civ. P. 30(c)(1) ................................................................................................................ 11

Fed. R. Civ. P. 30(d)(3)(B) ............................................................................................................ 4

Fed. R. Evid. 611(a) ....................................................................................................................... 4

**Other Authorities**

Standing Order for Depositions,
   Hon. Steven C. Seeger ......................................................................................................... 4

## INTRODUCTION

Plaintiff Charles Strow ("Plaintiff") submits this Memorandum of Law in Opposition to the Second Motion by B&G Foods, Inc. ("Defendant") to Dismiss the Amended Complaint for lack of Subject Matter Jurisdiction ("Am. Compl."). ECF No. 7.

Plaintiff alleges that Defendant's non-stick "butter" cooking spray, that until the fall of 2022 contained the unqualified term, "Butter" on the front label, with "Naturally & Artificially Flavored" off to the side in a thin font, difficult to read. Am. Compl. ¶¶ 1-2. Based on this labeling, Plaintiff purchased the Product, only to find out it lacked any butter.

The Court denied Defendant's First Motion to Dismiss, concluding that "it [wa]s not 'unreasonable or fanciful' for a consumer to believe that butter can exist in liquid form at room temperature." *Strow v. B&G Foods, Inc.*, No. 21-cv-5104, 2022 WL 4608948, at *7 (N.D. Ill. Sept. 30, 2022) quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 477 (7th Cir. 2020).

Based on Plaintiff's deposition testimony ("Strow Dep."), Defendant argues again for dismissal because it contends Plaintiff could not have been, and even admits, he was not injured, which means his claims fail for lack of standing. ECF No. 51, Defendant's Motion to Dismiss ("Def. Mem.") at 5.[1] None of its arguments are a basis for dismissal and its Motion should be denied.

## FACTUAL BACKGROUND

While briefing the First Motion to Dismiss, Defendant used a benign status report to argue that "because Plaintiff suffered no actual injury there is no case or controversy and the Court lacks jurisdiction." ECF No. 24, Minute Entry, Mar. 7, 2022.

---

[1] In support of its Motion, Defendant submits the Declaration of Matthew Borden ("Borden Decl."), ECF No. 51-1, excerpts from the transcript of Plaintiff Charles Strow's December 15, 2022 deposition, ECF No. 51-2, Ex. 1, a copy of an NPR article, dated October 30, 2021, ECF No. 51-3, Ex. 2, a copy of Facebook's Self-Serve Ad Terms, ECF No. 51-4, Ex. 3, and a copy of Facebook's Online Ad Targeting Page, ECF No. 51-5, Ex. 4.

At the Court's direction, Defendant's Supplemental Statement expounded on this issue, because "Plaintiff could not have believed the can of no-stick spray oil he purchased contained butter because, among other reasons, the label stated 'buttery flavor for your food without the butter.'" ECF Nos. 26, 26-2.




Nevertheless, following the Court's denial of its Motion, Defendant used the next status report to complain that "Plaintiff was also recruited, and not actually injured, by his lawyer who has filed hundreds of similar lawsuits regarding food labeling." ECF No. 40, Minute Entry, Oct. 24, 2022.

In response, Plaintiff's Counsel informed the Court of all the information it asked and found it "provided helpful background." ECF Nos. 41-42, Nov. 1-2, 2022.

2

Plaintiff's Deposition occurred on December 15, 2022. During the deposition, Plaintiff testified that the label of the Product he bought did not contain a statement "artificial flavor" on the front. However, Defendant's Counsel then presented the Product's updated label rolled out in the fall of 2022, and succeeded in obtaining Plaintiff's acknowledgement that it reflected the label upon which he relied in the summer of 2021.



Summer 2021　　　　Fall 2022

While Defendant has anticipated correctly Plaintiff would submit an affidavit in response to its Motion, its arguments for deeming it a "sham" fail for several reasons. Likewise with respect to its argument that he conceded he did not suffer a "natural injury."

3

**LEGAL STANDARDS**

When deciding a challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

**ARGUMENT**

**I.     PLAINTIFF PURCHASED THE PRODUCT AT ISSUE**

Defendant improperly attempts to misconstrue the testimony given by a fact witness to support a legal conclusion that "there is no way he could have been deceived into believing that the [P]roduct he bought was anything other than 'butter flavor' cooking spray," because he purportedly "testified that he relied on a different label than the one in the Complaint." Def. Mem. at 10 citing Borden Decl., at 58:19-59:14; 65:17-24 *compare with* Exhibit A, Declaration of Charles Strow ("Strow Decl.") and Exhibit B, Declaration of Spencer Sheehan ("Sheehan Decl.")

However, the label presented to Plaintiff during the deposition could not have been the label he relied upon because it was not sold during the time period when he made his purchase, in or around Summer 2021. Am. Compl. ¶ 68; Sheehan Decl. at 17.

In fact, this new label was not used until over a year later, likely in response to the present lawsuit. The Declaration of Charles Strow ("Strow Decl.") demonstrates that Plaintiff purchased the Product which was the subject of the Amended Complaint.

Defendant's Counsel "deliberately misle[]d the witness with false information" in an "attempt[ed] to trick [him]" by asking if he bought a Product he could not have, because it was not available in the summer of 2021, violating this Court's Standing Order. Standing Order for Depositions, Hon. Steven C. Seeger, at ¶ 12; *see* Fed. R. Evid. 611(a); Fed. R. Civ. P. 30(d)(3)(B).

These actions, "[substituting images] in an attempt to mislead a witness—are improper, and they support a trial court's decision to sanction the responsible party." *REXA, Inc. v. Chester*,

4

42 F.4th 652, 672 (7th Cir. 2022), reh'g denied, No. 20-2953, 2022 WL 3724306 (7th Cir. Aug. 29, 2022)

By presenting Plaintiff with a strikingly similar, yet different, copy of the Product's label, in anticipation of its argument that he "testified that he relied on a different label than the one in the Complaint," Defendant's counsel has attempted to "deliberately mislead the witness with false information." Standing Order for Depositions, Hon. Steven C. Seeger, at ¶ 12.

This is not a situation where Plaintiff "did not see [the] advertisement," or "did not plead reliance on a false statement," as he did in fact purchase the Product which was the subject of the Amended Complaint. Def. Mem. at 11-12 citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019-20 (9th Cir. 2011) and *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363-64 (Cal. Ct. App. 2010).

That "[t]here is literally nothing that [Defendant] could have done to make it any clearer that the cooking spray was naturally and artificially butter flavored" overlooks both "the totality of the information made available to [Plaintiff]" and this Court's previous order denying its motion to dismiss the same argument. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005); *see* ECF No. 34.

Defendant also grossly mischaracterizes Plaintiff's deposition testimony that he "threw out" the Product when he was finished with it by referring it to this as "spoliat[ing] the label" and arguing that he "destroyed the can and label that he supposedly relied on, after talking to his lawyer." Def. Mem. at 11 citing Strow Dep. 65:17-24.

Instead of imposing some malicious intent on Plaintiff's decision to discard the Product when he no longer desired to use it, it is much more plausible to accept the simple explanation he gave at his deposition, where he stated he does not save cans. Strow Dep. 65:24.

5

**II.    PRICE PREMIUM ALLEGATIONS ESTABLISH ECONOMIC INJURY**

Defendant further attempts to mischaracterize the deposition testimony by arguing that Plaintiff "candidly admitted he was not injured," "did not care about any of the health or nutrients related to using butter," and "[t]he only reason he filed suit is that his lawyer *contacted him* to engineer this case." Def. Mem. at 12-13 (emphasis added).

The specific response identified by Defendant which purportedly supports its contention comes from the following exchange:

> Q: We talked a little bit about this before, but I'm going to get a little bit more detail from you. Is it your claim that you suffered some kind of injury from buying this product?
>
> A: I didn't suffer a **natural** injury, no.
>
> Q: We've been going for about an hour. Do you want to take another break? I don't know – lets go off the record and talk for a sec.

Strow Dep. 90:25-91:8 (emphasis added).

After a brief recess, the deposition commenced here, meaning that this was effectively the last question asked of Plaintiff, and as previously stated, the parties indicated an intention to resume the deposition at another time, meaning Plaintiff's counsel was not given opportunity to rehabilitate this testimony.

While it is true that Plaintiff was not "injured" in the sense of suffering food poisoning as a result of purchasing and consuming the Product, or from the can exploding, causing physical harm, he testified that he "would have not bought this at all if I would have known that it contained the oil and margarine that it says on the back." Dep. Trans. 29 lines 19-21.

Plaintiff's injury is identical to those asserted throughout this Circuit, where "[the] loss is financial: []he[] paid more for the [Product] than []he[] would have, had []he[] known [the Product contains no butter]." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("A

6

financial injury creates standing."); *see also see Biffar v. Pinnacle Foods Grp., LLC*, No. 16-cv-0873, 2016 WL 7429130, at *4 (S.D. Ill. Dec. 22, 2016) (similar allegations were "a plausible theory of damages" at pleading stage); *see also McDonnell v. Nature's Way Prods., LLC*, No. 16-cv-5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (affirming "'relatively bare-bones' allegations that [plaintiff] 'paid more for the products than they were actually worth'" were sufficient to show standing).

Indeed, Plaintiff did not "g[et] exactly what he bargained for in terms of function, flavor, and nutrients," because he testified that the Product "looked [like] it had butter in it," which is "all [he] use[s]," "all [he] was raised with, so that was why [he] grabbed that." Def. Mem. at 12; Strow Dep. 19:16-17. He further testified that "instead of using butter, [he] sprayed the [Product] on the grilled cheese, [a]nd [he] wish[ed] [he] wouldn't have done that because what [he] know[s] now, [he] just wish[es] [he] wouldn't have done that," because "when [he] find[s] out something is not what it portrays, that has a big issue with [him]." Strow Dep. 19:20-20:5.

It is irrelevant whether there was anything "unsatisfactory to [Plaintiff] about the functionality of the cooking spray, the taste, or the nutritional content," because he "only was buying it for butter," "the only -- the wholehearted reason," "[t]hat's what [he] bought it for." Def. Mem. at 13; Strow Dep. 14:16-17, 57:7-8.

Further, Plaintiff did not "g[e]t the benefit of [his] bargain," because he believed and "expected it contained butter," even though it did not. *Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1041 (N.D. Ill. 2017); Am. Compl. ¶ 69.

By alleging that "[t]he Product is sold price premium," and that he "would not have bought [it] or would have paid less" had he known that it "contains no butter," Plaintiff "has pled damages sufficiently under the ICFA." *Biffar*, 2016 WL 7429130, at *4; Am. Compl. ¶¶ 4, 52-53.

7

Plaintiff's counsel intends to show how this overcharge can be calculated when Plaintiff moves for class certification. At that time, Defendant can challenge the methodology used, among other things.

### III. PLAINTIFF WAS NOT RECRUITED OR SOLICITED

Defendant further argues that "Plaintiff's lawyer used Facebook's targeted messaging to solicit Plaintiff, who, satisfied with the No-Stick Spray's taste and performance, had no interest in suing B&G Foods prior to receiving the message." Def. Mem. at 9 citing Borden Decl., at 35:19-24.

Counsel has previously detailed the origin of his relationship with Plaintiff and addressed the baseless accusations and mischaracterization of attorney advertising as "solicitation" and "recruitment," which appear to be par for the course for Defendant's counsel and are not unexpected.[2]

Indeed, Plaintiff's counsel did not solicit professional employment from Plaintiff, via in-person, live telephone or real-time electronic contact, but rather only contacted Plaintiff by telephone after he submitted his information in response to an advertisement and signed the Agreement which was sent to him.

On August 17, 2021, Plaintiff's counsel posted three versions of a Facebook advertisement, differing only in the image used, which stated:

---

[2] Defense counsel's website has prominently boasted that it uses "aggressive strategies" to "out-maneuver" adversaries, and a search of counsel and "sanctions motions" produces a litany of listings, including a warning to him to refrain from making assertions of impropriety without due consideration. *See, e.g.*, *Walker v. B&G Foods, Inc.*, No. 15-cv-03772, 2019 WL 3934941, at *4 (N.D. Cal. Aug. 20, 2019); *see also Katziff v. Beverly Enterpr. Inc.*, No. 07-cv-11456, 2009 WL 10729569 (D. Mass. Apr. 17, 2009).

Purchase a non-stick butter spray that contained no butter? Recent investigations have shown that many "butter" non-stick sprays do not contain any real butter. If you have recently purchased this product sign up below.



Plaintiff responded to the ad on August 22, 2021 by clicking the ad, where he was asked to confirm he purchased the Product. Upon doing so, he provided his name, address, phone number, email, the name of the store and address where he made the purchase, along with the approximate date. On August 22, 2021, at 7:35 PM Coordinated Universal Time (UTC-04:00), Plaintiff's counsel sent Plaintiff an agreement for representation"

A review of counsel's records shows that he contacted Plaintiff by telephone on September 27, 2021, at 5:57 PM Eastern Time and that the call lasted for several minutes. Plaintiff needed no reminding about the document he signed, and indicated he understood it. However, he was informed that it is necessary to go through the agreement and that after finished, counsel will be

9

happy to answer any questions. Plaintiff was told this agreement was not related to a settlement, but a possible class action lawsuit. It was confirmed orally that the contact and purchase information provided by Plaintiff was correct.

Plaintiff's responsibilities to the class above his own were emphasized, and he was informed that if the case has some success, he will need to participate in the discovery process, which typically includes a deposition. However, he was informed that because he is only required to answer truthfully, there is nothing to worry about.

The process was described from Plaintiff's perspective during his deposition testimony:

> "I was -- I believe I was on Facebook and I was talking to some friends, whatever. And for some reason, I want to say Spencer's name was on Facebook and I came across it. And that's when I was reading about it and I was like what is this. So I pulled it up. I read about it. Then after I read about it, I actually done some Google and research and I was reading about this. And I was like you've got to be kidding me. And that's when I actually - I think I sat for maybe a day or so and I was like I'm going to go ahead and fill this out and contact him and see what the deal is with this. And the more I was researching, the more I was reading about it, that's when I was realizing that's not what it says it is. I never knew that[.]"

Strow Dep. 20:21-21-12.

While throughout the Deposition, Defendant's counsel insisted on using words such as "solicitation" and "communication," again "mischaracteriz[ing] what [Plaintiff] previously said," Plaintiff explained multiple times that he understood the Facebook post to be an advertisement.

For example, he explained that "In my opinion, I would not call it a solicitation, but, yes, I did - I did see a - an ad. It was him I believe asking if we -- if we had this product or if we ever purchased this product and if we knew what it had in it compared to what it says. And that got my attention and I started researching a little bit looking and comparing what it had and what it was portraying to me what I thought it had was completely opposite." Strow Dep. 34:8-17.

Directly after giving this response, and being asked what "the **communication** from your lawyer that you received on Facebook sa[id]," he responded that he "do[esn't] remember what the

10

**ad** exactly said." Strow Dep. 36:12-17 (emphasis added). When again asked if he "k[ept] a copy of the **communication** from your lawyer," Plaintiff responded and corrected Defendant's counsel by stating "[t]he **ad**, no, sir, no." Strow Dep. 37:7-9 (emphasis added).

Perhaps the basis for Defendant's counsel's confusion as to the nature of the advertisement is demonstrated by the following question he posed to Plaintiff: "How – and this is - I'm kind of old and I don't use Facebook, but when something pops up on your·Facebook, is that something that you can save or is it·stored anywhere?" Strow Dep. 37:10-13.

When viewing these facts and deposition testimony and "draw[ing] reasonable inferences in favor of the plaintiff," it is clear that he was not "being recruited" or sent a misleading "solicitation," but rather viewed and responded to what he recognized to be an advertisement on Facebook. Def. Mem. at 9; *Ezekiel*, 66 F.3d at 897.

### IV. PLAINTIFF WAS NOT AFFORDED OPPORTUNITY TO REHABILITATE DEPOSITION TESTIMONY

As per Fed. R. Civ. P. 30(c)(1), "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence," meaning that Plaintiff's counsel should have been permitted to "rehabilitate the previous testimony" of his client. *See People v. Ortiz*, 207 Ill. App. 3d 1, 9 (1990).

Since the parties indicated their intent to "continue the deposition at another time," Plaintiff should be afforded the opportunity to "legitimately clarify or expand upon [his] testimony," particularly where, as here, "the deposition testimony is ambiguous or incomplete." *See Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir. 1999); Strow Dep. 91:19-20.

### V. "SHAM-AFFIDAVIT" RULE IS NOT APPLICABLE

Defendant lastly argues that "Plaintiff's testimony eliminates any possible claim he could have against [it]," and that the "sham-affidavit rule" prohibits him from "fix[ing] the problem by

simply amending his pleading to make allegations that contradict his testimony, or [] offering an affidavit that does the same thing." Def. Mem. at 14 citing *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020).

As explained by the court in *James*, "at the *summary-judgment* stage," judges are permitted to disregard "sham" affidavits, meaning "an affidavit that contradicts prior testimony." *James*, 959 F.3d at 316 (emphasis added) citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985). However, Plaintiff would not be submitting any declaration that would contradict prior testimony, given that his deposition testimony was consistent with the allegations of the Amended Complaint, notwithstanding Defendant's attempts at trickery and mischaracterization.

However, Plaintiff should be permitted to submit a supplemental affidavit because he "was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy," which would "clarify[y] ambiguous or confusing deposition testimony." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).

Further, the facts of the present dispute are far removed from the scenario in *James*, where the "complaint allege[d] that James was 'never seen by any medical staff' 'for a week'" and that he "received no medical attention to the problems at hand or was even seen by medical staff," when he acknowledged in his deposition that he saw nurses "daily." *James*, 959 F.3d at 316.

Here, Defendant's counsel presented Plaintiff with a near-identical version of the Product's label, in anticipation of its argument that he testified he relied on a different label. Aside from being a violation of this Court's Standing Order for Depositions, this purported contradiction essentially "concern[s] minor details," as the label he was shown similarly failed to disclaim the

12

presence of butter. *James*, 959 F.3d at 316 citing *McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018).

Further, while Defendant urges this court to prohibit Plaintiff from "amending his pleading" or "offering an affidavit" before he has decided to do either, courts in the Seventh Circuit and around the country have noted that the "sham-affidavit rule is narrow and should be applied with caution." *See, e.g.*, *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015); *Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (noting that a number of the circuits have "urged caution" in applying this rule).

## VI. ATTACKS TO PLAINTIFF'S COUNSEL ARE BETTER SUITED TO MOTION FOR CLASS CERTIFICATION

Plaintiff's counsel will not substantively respond to all of Defendant's "disparaging personal remarks," such as "the Solicitation that Plaintiff's lawyer sent was misleading" or that a "wave of litigation" is driven by "the lawyer seeking out people like Plaintiff and convincing them to deluge the federal courts." Seventh Circuit's Standards for Professional Conduct, Lawyers Duties to Other Counsel, 2, 4 ("We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.")

However, challenges to the adequacy of Plaintiff's counsel would be better suited to a motion for class certification, pursuant to Fed. R. Civ. P. 23. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 n.5 (2011) (explaining how the "commonality and typicality requirements of Rule 23(a)" "tend to merge with the adequacy-of-representation requirement"); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 591 (7th Cir. 1993) (deciding issues related to adequacy of counsel at class certification stage); *Amgen Inc. v. Connecticut Ret. Plans*

13

*& Tr. Funds*, 568 U.S. 455, 460 (2013) (same); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (same).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file a Second Amended Complaint.

Dated: March 9, 2023

        Respectfully submitted,

        Sheehan & Associates, P.C.
        /s/Spencer Sheehan
        Spencer Sheehan
        spencer@spencersheehan.com
        60 Cuttermill Rd Ste 412
        Great Neck NY 11021
        Tel: (516) 268-7080

**Certificate of Service**

I certify that on March 9, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan