# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Charles Strow, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>– against –<br><br>B&G Foods, Inc.,<br><br>      Defendant. | Case No.: 1:21-cv-05104<br><br>Judge Steven C. Seeger |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
B&G FOODS, INC.'S MOTION TO DISMISS FOR LACK OF STANDING**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

I. PLAINTIFF CANNOT ESTABLISH INJURY OR CAUSATION ................................. 2

    A. Plaintiff's Post Hoc Declaration Does Not Prove Injury or Causation, and Only Underscores that None Exists ................................................................ 4

    B. Plaintiff's Testimony Cannot Be "Rehabilitated" ..................................................... 6

    C. Plaintiff Does Not Meaningfully Dispute that He Was Recruited .......................... 7

    D. Plaintiff Does Not Address the Deluge of Cases Filed by His Lawyer ................. 8

II. PLAINTIFF WAS NOT "TRICKED" ............................................................................. 8

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

CASES                                                                                                          PAGE(S)

*Adelman-Tremblay v. Jewel Cos., Inc.*,
   859 F.2d 517 (7th Cir. 1988) .............................................................................................. 6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................................. 7

*Apex Dig., Inc. v. Sears, Roebuck & Co.*,
   572 F.3d 440 ............................................................................................................... 3, 5, 6

*Bazile v. Fin. Sys. of Green Bay, Inc.*,
   983 F.3d 274 (7th Cir. 2020) .............................................................................................. 3

*James v. Hale*,
   959 F.3d 307 (7th Cir. 2020) .............................................................................................. 5

*Kanzelberger v. Kanzelberger*,
   782 F.2d 774 (7th Cir. 1986) .............................................................................................. 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................. 1

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
   298 U.S. 178 (1936) ............................................................................................................. 3

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) ............................................................................................ 3, 6

*Ramirez v. T&H Lemont, Inc.*,
845 F.3d 772, 776 (7th Cir. 2016) ) ......................................................................................... 10

*Retired Chi. Police Ass'n v. City of Chicago*,
   76 F.3d 856 (7th Cir. 1996) ................................................................................................ 3

*REXA, Inc. v. Chester*,
   42 F.4th 652 (7th Cir. 2022) ............................................................................................... 9

*Russell v. Acme-Evans Co.*,
   51 F.3d 64 (7th Cir. 1995) ................................................................................................... 5

*Silha v. ACT, Inc.*,
   907 F.3d 169 (7th Cir. 2015) .............................................................................................. 3

*Trask-Morton v. Motel 6 Operating L.P.*,
   534 F.3d 672 (7th Cir. 2008) ............................................................................................ 10

B&G Foods respectfully submits this Reply in support of its Motion to Dismiss.

**INTRODUCTION**

Plaintiff's Opposition only highlights, rather than addresses, the fundamental problems with his brand of lawyer-driven litigation and does not square it with the basic legal requirements applicable to all litigants who seek to engage the federal courts. The problem is that when a lawyer is simply using a person as a springboard for legal claims invented by the lawyer, the actual client has not suffered any harm, and they do exactly what Plaintiff undisputedly did here: (1) testify that he relied on, and was misled by a non-misleading label that he now claims (after talking to his lawyer) he never saw; (2) testify that he has not suffered any injury; and (3) admit that he does not even know who his own lawyers are or what they are doing in his case. (Mot. at 4.) Plaintiff does not dispute any of these facts.

Similarly, Plaintiff does not dispute, or even address, that he continued using the accused spray oil for a year and half without noticing any difference in the taste or functionality of the product. (*Id.*) Nor does he dispute that he had no interest in suing B&G Foods until his lawyer prompted him to do so—after beguiling him into it through a misleading solicitation that itself violated the Rules of Professional Conduct. (*Id.* at 1.)

These undisputed facts show that Plaintiff cannot satisfy the "irreducible constitutional minimum" of Article III standing, as he has not incurred any injury from the accused spray oil, and he cannot prove causation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Instead of engaging with the Motion, Plaintiff's Opposition attempts use lawyer-written affidavits to contradict the testimony he spontaneously gave (Opp. at 11-13; Dkts. 51-1 & 51-2), which is not allowed under the sham affidavit rule and which does not really address the underlying problem anyway—that Plaintiff is willing to say he relied on anything because, as he

1

testified, he has not suffered any injury. Nor was Plaintiff "tricked" as his lawyer asserts. (*Id.* at 4.) There is nothing tricky about showing someone an image and asking in a non-leading manner whether it is something he has seen. Such a question is only tricky if the witness is trying to repeat lines his lawyer coached him to say, rather than testify truthfully about what caused him to buy a product. Under these circumstances, Humpty Dumpty cannot be put back together by affidavit or rehabilitated on re-direct because the case is, like a broken egg, irreparably shattered.

Plaintiff's Opposition also fails to dispute, or even address, this Court's inquiry into the other filings by his lawyer. In addition to clogging the courts and taxing businesses, these serial filings are also unfair to the individuals who are tricked into acting as plaintiffs. Such lawsuits have no place in federal court and cannot meet the requirements of Article III because they are not real cases or controversies. Plaintiff's claims should be dismissed.

## ARGUMENT

### I. PLAINTIFF CANNOT ESTABLISH INJURY OR CAUSATION

Plaintiff's Opposition claims that he should be allowed to submit an affidavit to change his testimony that the label he supposedly relied on was different than the one in his complaint, and he further claims that he should be allowed to change his testimony that he did not suffer any injury and now claim that he did incur an injury. (Opp. at 11-13.) These arguments have no merit for the reasons identified below: (1) once someone offers testimony that torpedoes their claims in this fashion, they cannot simply say, "Oops," and offer testimony that is diametrically opposed to what they contemporaneously admitted under oath; and (2) regardless of whether Plaintiff is allowed to contradict his prior testimony, the fact that he was willing to testify that a label clearly marked "butter flavor naturally & artificially flavored spray oil" misled him only underscores that he could not have been misled by the label. Moreover, equally fundamentally, Plaintiff does

2

not even address many facts separately showing that he did not suffer any injury that was caused by anything B&G Foods supposedly did.

For example, Plaintiff does not dispute that he did not have any issue with the product's performance or taste until he was solicited to make these claims by his lawyer. (*Id.* at 5-6, 9-10.) This fact, alone, shows that he was not injured. He got spray oil. It did exactly what spray oil does: it prevented his food from sticking to the pan. It tasted exactly how he wanted, expected, and hoped it would taste. And it was not more or less healthy than he expected; indeed, he did not even care about that.[1] (Mot. at 10 & n.4.) Contrary to his brief (Opp. at 6-8), Plaintiff got exactly what he paid for and only wanted to sue after he was recruited.

Other facts that Plaintiff does not even address in his Opposition also show that he was recruited rather than injured. Plaintiff does not dispute that his lawyer used Facebook's targeted advertisements to solicit him. (*Id.* at 5-6.) He does not offer the advertising criteria or any other evidence to show that it was somehow not targeted (which would defeat the whole purpose of using Facebook). Plaintiff also does not attempt to refute or explain his own testimony that he was misled about the purpose of the communication from his lawyer, which omitted the required

---

[1] Because this is a factual challenge to Plaintiff's standing, Plaintiff is not entitled to any favorable inferences drawn from the allegations in the Complaint. *Silha v. ACT, Inc.*, 907 F.3d 169, 173 (7th Cir. 2015) ("A factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient"). "Once allegations supporting standing are questioned as a factual matter—either by a party or by the court—the plaintiff must support each controverted element of standing with 'competent proof,' which [the Seventh Circuit] ha[s] understood as 'a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

language about attorney advertising. (Mot. at 1.) Nor does Plaintiff address, much less offer any explanation for why he did not know who all his lawyers were. (*Id.* at 4.) Nor does he address, much less dispute, his testimony that he had no desire to sue B&G Foods until he talked with his lawyer. (*Id.* at 3.) All these facts separately establish that Plaintiff was recruited, rather than injured.

Finally, Plaintiff does not dispute that he testified that (1) he did not suffer any injury, (*id.* at 5, 9); (2) he relied on a label other than the label identified in his complaint, (*id.* at 5, 7); (3) he claimed he was misled by the label he identified, even though it stated on it that it was "butter flavor naturally and artificially flavored no-stick spray," (*id.* at 7); and (4) he spoliated the product and its label after speaking with his lawyer, (*id.* at 8). These facts likewise show Plaintiff lacks standing to bring each of his claims because they demonstrate that he could not have been injured.

### A. Plaintiff's Post Hoc Declaration Does Not Prove Injury or Causation, and Only Underscores that None Exists

Plaintiff's Opposition attempts to address this last set of undisputed facts by asking the Court to rely on a lawyer-written declaration, which seeks to recant damaging testimony Plaintiff gave at his deposition. In it, Plaintiff claims that contrary to his oral testimony that "I can read it, yes," and that the image shown to him was a true and correct copy of the label that he relied on in making his purchase (Strow Dep. at 59:2-7), he now wants to testify that he did not rely on the "butter flavor naturally and artificially flavored no-stick spray" label and that he actually "had difficulty seeing parts of the image," (Strow Decl. ¶ 19).[2] These post hoc attempts to directly

---

[2] By his own account, Plaintiff avoided disclosing this supposed fact to the Court or to B&G Foods for 82 days after he knew about this alleged "mistake."

contradict his testimony easily fall within the sham-affidavit rule, as explained in the moving papers. (Mot. at 11-13.)

Plaintiff claims that his declaration should be considered because "Plaintiff would not be submitting any declaration that would contradict prior testimony." (Opp. at 12.) This is simply not true. His sworn testimony is that he relied on the "butter flavor naturally and artificially flavored no-stick spray" label. (Mot. at 7.) His new proposed testimony is that he did not rely on it. (Strow Decl. ¶¶ 4-29.) His testimony also was not on a collateral issue; it was literally on the most important issue in the case, what label he supposedly relied on to his detriment. As the Seventh Circuit explained in *James v. Hale*, which Plaintiff cites but does not really discuss, applying the sham-affidavit rule is especially important where, as here, the "contradictions do not concern minor details." 959 F.3d 307, 316 (7th Cir. 2020). Nor can the rule be invoked, as Plaintiff seeks to do here, to make a 180-degree reversal on the facts. *Id.* at 315. And, although the case law cited in the Opposition mentions the principle that ambiguous testimony may be clarified, (Opp. at 12), in the case cited, the court disregards the contradictory testimony, *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).

Contrary to Plaintiff's unsupported argument that the sham-affidavit rule only precludes a party from contradicting sworn testimony at the summary-judgment stage (Opp. at 11-13), there is no logical reason why a party ever should be able contradict prior testimony under oath through a contradictory declaration written by his lawyer. It is even more important to apply this rule in the context of a factual determination of this Court's subject-matter jurisdiction, which requires a vigilant assessment at all stages of the litigation. *Apex Dig.*, 572 F.3d at 444. Indeed, factual challenges to standing are actually *more expansive* than those for summary judgment. As the Seventh Circuit has explained, when adjudicating a factual challenge to subject matter

jurisdiction, "the trial court may proceed as it never could under Rule 12(b)(6) or Rule 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Mortensen*, 884 F.2d at 891). The importance of the balance of federalism demands a searching inquiry: "if the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Id.* (quoting *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)).

Finally, Plaintiff's claim that he was misled by the "butter flavor naturally and artificially flavored no-stick spray" label is equally fatal to his case for the separate reason that it shows that he is oblivious to the very part of the label he claims caused him to buy the product. Plaintiff's whole theory is that he was misled by the word "butter" because the product was not identified as "butter flavor." (Compl. ¶ 28.) But when he was shown a label with "butter flavor" on it, he claimed that he was misled by that, too. Under such conditions, if Plaintiff did not actually rely on the label he testified he saw and relied on, the only explanation for Plaintiff's deposition testimony is that he was willing to say anything to try to serve as a plaintiff in this case. This only underscores that this case was contrived by Plaintiff's lawyer and that Plaintiff was recruited, rather than injured.

### B. Plaintiff's Testimony Cannot Be "Rehabilitated"

Plaintiff also claims that he should have been allowed to "rehabilitate" his testimony that he was not injured because he stopped the deposition before it was finished.[3] Similar to his

---

[3] Plaintiff's asserts that B&G Foods somehow tricked him or was discourteous to him, (Opp. at 4), but at the same time Plaintiff seeks to take advantage of the fact that B&G Foods was respectful of the witness's scheduling needs by adjourning the deposition for him to attend to personal matters (Opp. at 12).

inability to provide a sham-affidavit, there is no way that Plaintiff could truthfully contradict such testimony after making this case-ending admission. "[A] *genuine* issue of material fact cannot be conjured out of nothing." *See James*, 959 F.3d at 316; *see also Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 521 (7th Cir. 1988) ("The purpose of summary judgment motions . . . is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) ("discredited testimony is not [normally] a sufficient basis for drawing a contrary conclusion") (alteration in original). Moreover, the deposition ended at Plaintiff's request. (Strow Dep. 91:15 – 92:8.) Plaintiff's lawyer made no effort to schedule a follow-up deposition to elicit further testimony.

Finally, combined with his testimony that he never read the back of the can, (Strow Dep. 32:9-25), despite alleging that he relied on it, (Compl. ¶¶ 43-47, 72); that he continued to use the product for a year and a half without issue, (Strow Dep. at 65:17-24); and his disavowal or ignorance of virtually every key allegation in the Complaint are further reasons why any effort to "rehabilitate" his testimony are futile.

    **C.**    **Plaintiff Does Not Meaningfully Dispute That He Was Recruited**

As set forth in the moving papers and discussed above, Plaintiff testified that he was misled by the solicitations appearing on page 9 of the Opposition because there was no "investigation" being done and because he had no idea that his lawyer was simply looking for someone to act as a plaintiff. (Mot. at 3-4.) Rather than address this fact or that Plaintiff's lawyer violated Illinois and New York laws relating to advertising by failing to include the language mandated by the Rules, (*id.* at 6), Plaintiff simply repeats the story that he submitted to the Court in his supplemental filing (Dkt. 41), and chides defense counsel for describing his solicitations as solicitations in the deposition (Opp. at 8-11). These arguments are red herrings. Regardless of

what word is used to describe what Plaintiff's lawyer sent, it is undisputed that the communication was (1) misleading, (2) misled Plaintiff, (3) violated the Rules of Professional Conduct on attorney advertising, and (4) was specifically targeted at Plaintiff via Facebook's algorithms and whatever instructions Plaintiff's lawyer gave Facebook—evidence that is not included in Plaintiff's Opposition. These undisputed facts show that regardless of whether the word "solicitation" is used, Plaintiff's lawyer procured Plaintiff through misleading means, which undermines any claim of injury.

    D.  **Plaintiff Does Not Address the Deluge of Cases Filed by His Lawyer**

In his Opposition, as in his response to the Court's Order to "file a statement and respond to the following statement: 'Plaintiff was also recruited, and not actually injured, by his lawyer who has filed hundreds of similar lawsuits regarding food labeling'" (Dkt. 40 at 1), Plaintiff makes no effort to address the context of this litigation. This complaint was filed in fewer than three hours, and the claims parallel hundreds of lawsuits Plaintiff's lawyer has filed before—an issue the Court directed Plaintiff's counsel to address, (*id.*)—but which Plaintiff's counsel expressly declined to address (Dkt. 41 at 5-6). These are not "unfounded accusations," as Plaintiff's lawyer suggests. (*Id.* at 6.) They are supported by evidence that Plaintiff could not have been the origin of numerous allegations in the complaint and suffered no injury. Just like countless other plaintiffs recruited by Plaintiff's lawyer through misleading solicitations, the evidence more than shows that Plaintiff's claims were manufactured by a lawyer who has not denied he has serially burdened the federal courts with similar litigation. (*See* Dkts. 52 & 52-2 ¶¶ 25-31.)

**II.  PLAINTIFF WAS NOT "TRICKED"**

In an effort to go on the offensive, the Opposition repeatedly accuses B&G Foods of attempting to trick Plaintiff by showing him a product label that was different than the one the

Complaint alleges that he bought. (Opp. at 4.) But Plaintiff cannot point to any misleading conduct; he was simply shown a label and asked if it was the one that he saw and relied on. The precise testimony is as follows:

> Q. Exhibit 4 for the record is labeled Crisco. It's an image of Crisco butter flavored – naturally and artificial flavored no-stick spray. Do you see that?
>
> A. If I look closely, I can – I can't even read the middle part between the butter and no-stick. I don't know what that says. I cannot read that at all. Maybe if I zoom in, yeah, then I can read it, yes.
>
> Q. Okay. Good. And let me just ask you is this a true and correct copy of the label of the product that you purchased?
>
> A. To my knowledge, yes.

(Strow Dep. at 58:19 – 59:7.) The label shown to Plaintiff is an actual label that is, as Plaintiff concedes, in use, and it is not misleading to show a deponent an actual label. The lone case that Plaintiff cites, *REXA, Inc. v. Chester*, involved allegations that a party had shown a witness falsified documents. 42 F.4th 652, 661 (7th Cir. 2022) (explaining that district court found that "by separating Appendix A from the Severance Plan and producing it elsewhere among the discovery documents, REXA attempted to conceal from Chester clear evidence that he had never received either the Severance Plan or the Assignment Agreement.").

Plaintiff does not allege that B&G Foods falsified any document and in fact admits that the label Plaintiff was shown was real. (Opp. at 3.) Nor was Plaintiff even asked a leading question about it; to the contrary, he freely identified it as the label he saw, when asked the open-ended question: "Is this a true and correct copy of the label of the product that you purchased?"

9

The only person who could possibly be "tricked" by such a question is someone who is not trying to tell the truth.[4]

Indeed, the only party that has engaged in litigation misconduct is Plaintiff. Plaintiff asserts that he bought a differently labeled product, but this fact is truly unknowable because after talking to his lawyer, he admittedly threw out the can with the label on it. This is very plainly spoliation of evidence because Plaintiff was under an obligation to preserve the evidence when he anticipated the possibility of litigation. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (explaining spoliation arises where a party is at fault, even where the party had no bad faith intent). Plaintiff claims that B&G Foods "grossly mischaracterizes" Plaintiff's testimony and conduct and that the spoliation was somehow allowed because Plaintiff "does not save cans." (Opp. at 5.) This is immaterial to Plaintiff's duty under Rule 37, which required him to preserve the evidence. *Trask-Morton*, 534 F.3d at 681.

## **CONCLUSION**

For the foregoing reasons, B&G Foods respectfully requests that the Court dismiss Plaintiff's claims for lack of subject matter jurisdiction.

---

[4] Moreover, if Plaintiff's lawyer truly believed Plaintiff was being deceived, the appropriate response would have been to confer with B&G Foods and seek guidance from the Court, as set forth in the Court's Standing Order regarding Depositions. (Order ¶ 12: "If the attorney for the witness believes that the questioning attorney is deliberately mischaracterizing the facts or the testimony, counsel should take a break and confer. After the deposition, the Court may entertain a motion as necessary."). Plaintiff's lawyer made no attempt to confer because there in fact was no mischaracterization of any evidence.

| Dated: March 22, 2023 | Respectfully submitted, |
|---|---|
| | BRAUNHAGEY & BORDEN LLP |

*(signature)*

Matthew Borden, Esq. (*Pro Hac Vice*)
David H. Kwasniewski, Esq. (*Pro Hac Vice*)
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808
borden@braunhagey.com
kwasniewski@braunhagey.com

Stephen Michael Donnelly
sdonnelly@plgfirm.com
PARIKH LAW GROUP, LLC
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 725-3476
sdonnelly@plgfirm.com

*Attorneys for Defendant B&G Foods, Inc.*