IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Charles Strow, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>– against –<br><br><br>B&G Foods, Inc.,<br><br>　　　　　　　　　Defendant. | Case No.: 1:21-cv-05104<br><br>Judge Steven C. Seeger |

**RESPONSE TO THE COURT'S JULY 14, 2023 ORDER**
**RE. DEPOSITION QUESTIONS (DKT. 69)**

　　Defendant B&G Foods, Inc. respectfully submits this supplemental brief in response to the Court's July 14, 2023 Order asking why Defendant showed Plaintiff an updated (current) product label during his deposition (Dkt. 69). The answer to this question goes to the heart of this case.

　　The undersigned showed Plaintiff an accurate label postdating the Complaint to assess, among other things, whether Plaintiff understood the Complaint's allegations filed under his name, whether he had purchased the product after receiving his lawyer's solicitation, whether he relied on the supposedly misleading feature of the product label versus something else on the label or the nature of the product itself, and whether and to what extent Plaintiff—an individual with an existing felony bench warrant—was willing to bend the truth to help his lawyer pursue this suit.

　　These are not idle questions or concerns. In recent years, the plaintiff class action bar has turned to recruited, non-aggrieved representatives to demand large cash settlements to enrich the lawyers at the expense of businesses with no discernable benefit to consumers, much less the judicial system. In some of these cases, the plaintiff has purchased the accused product at the

1

behest of their lawyer. *See*, *e.g.*, *Sandoval v. YummyEarth, Inc*., Case No. 5:17-cv-01832 (C.D. Cal.) (plaintiff bought product after her lawyer sent demand letter); *Kraus v. Snow Teeth Whitening LLC*, Case No. 2:20-cv-06085-SJF-ST (E.D.N.Y.) (claims dismissed after plaintiff admitted in deposition to buying product after complaint prepared by lawyers). In others, the plaintiffs have testified that they did not rely on the images provided in their own complaints. *See*, *e.g.*, *Hunt v. Sunny Delight Beverages, Co*., No. 8:18-cv-00557-JLS-DFM, 2018 WL 6786265 (C.D. Cal. Dec. 18, 2018) (sanctioning plaintiffs for using images in complaint that they did not rely on in purchasing product).

Such plaintiffs are not truly misled by a product or particularly concerned about a product's label. Rather, when questioned under oath, they frequently disagree with major portions of their own complaints. These individuals are, if anything, victims of their own lawyer's designs and frequently unaware of the claims and allegations filed under their names, are unfamiliar with the products they say they bought, or buy the product at their lawyer's encouragement for the purpose of filing a lawsuit. *See, e.g., Poyer v. Snow Teeth Whitening, LLC*, Case No. 2:22-cv-01506-GRB-ST, Dkt. 32-1 (E.D.N.Y.) (collecting cases).[1]

---

[1] *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (plaintiff had no standing where she could not have seen the representations in question prior to her purchase); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("Of course, if Plaintiff did not see the website and Facebook page beforehand, he could not have been injured by them."); *Red v. Unilever PLC*, No. C 10-00387 JW, 2010 WL 3629689 at *1 (N.D. Cal. Sept. 14, 2010) (plaintiff's lawyer offered individuals a "kickback" or "finder's fee" in return for "signing up" as a named plaintiff in class actions). The lawyers in these cases often recycle the same plaintiffs in their demand letters and sometimes in their pleadings. For example, in one case filed against B&G Foods, the plaintiff, Troy Walker, had been involved in more than 35 legal actions and his lawyer had recycled the same plaintiffs in dozens of demand letters and complaints. After plaintiff's deposition was noticed, he dismissed the case, only to have his sister (herself a veteran of more than 20 lawsuits) re-file the same cut-and-paste claims. *See Walker v. B&G Foods, Inc.*, No. 3:15-cv-3772-SC (N.D. Cal.), Dkt. 14-2; *Silva v. B&G Foods, Inc.*, No. 4:20-cv-00137-JST (N.D. Cal.), Dkt. 16.

As to this case, Plaintiff's lawyer has filed several putative class cases against food companies involving similarly dubious allegations – all of which he dismissed. In one, the plaintiff asserted that the label of our client's vanilla-flavored beverage misled him into believing that a certain percentage of the vanilla flavoring came from *V. Planifolia*. *See Pichardo v. Only What You Need, Inc.*, Case No. 1:20-cv-00493-VEC (S.D.N.Y.) (dismissed with prejudice by Judge Caproni). In another, a recycled plaintiff claimed that he thought the term "cold pressed" meant that the product had not undergone high-pressure processing, even though the juice stated so on the label. *See Campbell v. Drink Daily Greens, LLC*, Case No. 1:16-cv-7176-ILG-PK (E.D.N.Y.) (dismissed with prejudice by Judge Glasser). These are just examples.[2] The common thread running through each is that a named plaintiff claimed to have been misled and to have paid a "price premium," when it appeared that neither was true, and that the plaintiff had been recruited to pursue manufactured claims intended to enrich the lawyer at almost every other stake holder's expense.

At the time of the deposition at issue, B&G Foods had many reasons to believe that Plaintiff's claims in this case also had been manufactured—a thesis it wished to test. Plaintiff appears to be a convicted felon with an active bench warrant for his arrest in Kentucky, a true and correct copy of which is attached as **Exhibit A**. He had been recruited to file this lawsuit through a Facebook solicitation. (Dkt. 52.) And his claims, while ostensibly based on the label, were that he bought a butter substitute, which is specifically labeled as having less calories and fat than butter, and "buttery flavor for your food ***without*** the butter" (emphasis added) because he somehow thought it contained butter. He has presented these claims to the Court without

---

[2] This Court has observed that there are many others. *See Guzman v. WalMart, Inc.*, Case No. 1:22-cv-03465-SCS, Dkt. 23.

explaining that the product is marketed to people who want to avoid butter, and without providing complete images of the label at issue, as his lawyer has done in other matters. *See*, *e.g.*, *Campbell*, No. 16-CV-7176, 2018 WL 4259978 at *3 & n.4 (finding that the labels Campbell "included in his complaint are misleadingly cropped").

At his deposition, Plaintiff testified that he never saw, much less relied upon, various statements alleged to be misleading to him in the Complaint. (E.g., Strow Dep. at 27-28.) He also testified that he had no intention of suing B&G Foods until he received a communication from his lawyer because the accused spray oil had functioned and tasted how he wanted it to. (Strow Dep. at 20-21, 34-35.) It also became clear that Plaintiff was trying to say what his lawyer hadasked him to say, such as that he used butter incessantly (*i.e.*, except when he decided to use no-stick spray oil).

To test whether Plaintiff was misled in the way that he alleged in his Complaint, he was shown a copy of the current label of the product. A true and correct copy of Exhibit 4 to Plaintiff's deposition, which is the label he was shown and testified about, is attached as **Exhibit B**. Plaintiff's Complaint states that he supposedly was misled into believing that butter-flavored spray oil contained actual butter because the product said "butter" on it without having the word "flavor" as a modifier. The current label has the words "Butter Flavor" instead of the word "Butter," and states, directly underneath, "naturally and artificially flavored"—so it is labeled exactly how the Complaint alleges the product should be labeled.

At his deposition, Plaintiff was shown the new label to determine if he bought the product after filing suit at the behest of his lawyer, and to test if he actually was misled by the absence of the word "flavor" as he alleged in his Complaint. In structuring the deposition in this manner, B&G Foods was able to establish that even if the product was labeled in the manner Plaintiff

4

requested in his own Complaint, he still would have filed this lawsuit, *viz*, because he was told to do so. As such, B&G Foods was able to gain information in support of its standing defense, as well as to its defenses to class certification, to summary judgment and, if necessary, to Plaintiff's testimony at trial. Using the current label was the best way to obtain such information.

The Court has expressed concern about whether Plaintiff was tricked into believing the label shown at his deposition was the prior label of the product. But that did not happen. Rather, the undersigned asked a non-leading question about the current label: "[I]s this a true and correct copy of the label of the product that you purchased?" Prior to that question, Plaintiff was told: "Exhibit 4 for the record is labeled Crisco. It's an image of Crisco butter flavored – naturally and artificial flavored no-stick spray." There was no effort to mislead or somehow trick the witness. Rather, he was shown a label and read text which any reasonable person misled by the label would have understood as correcting the alleged omission ("flavored" modifying "butter") cited in his Complaint as the grounds for this lawsuit.

Based on this non-leading question, Plaintiff testified that he believed the current label was the actual label of the product he bought and supposedly is suing B&G Foods to change. Based on this admission, it is reasonable to conclude that Plaintiff either bought the product after he filed suit, or was not really misled by seeing the unadorned word "butter," as his pleading alleges. Or, perhaps Plaintiff was indifferent to whether the product contained butter (notwithstanding what his lawyer had written in the Complaint and counseled him to say), or was testifying that he was misled simply because his lawyer had told him to do so—or a combination of some or all of these factors.

Plaintiff's testimony also showed that having the words "naturally and artificially flavored" directly underneath the words "butter flavor" made no difference to him. In light of

5

this testimony, the undersigned saw no reason to ask additional questions about the label that Plaintiff swore that he had relied on in buying the product.[3]

The Court has also asked questions about the provenance of Exhibit B. The image was pulled from the Internet from a website selling the product, such as Amazon. A true and correct copy of the schematic drawing for the current label (Bates No. BG000002) is attached as **Exhibit C**. As seen by comparing Exhibits B and C, Exhibit B is an accurate image of the product with the current label on it.

The Court also asked about counsel's understanding about the current label at the time of the deposition. Counsel knew that the label had been updated following B&G Foods' acquisition of the brand, that Exhibit B was the current label and that the new labels had gone into stores. That was one of the reasons that the current label was used, i.e., because it helped address the precise concerns at issue, namely, Plaintiff's reasons for bringing this lawsuit, and his standing to do so.

Dated: July 24, 2023

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

Matthew Borden, Esq. (*Pro Hac Vice*)
borden@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

*Attorneys for Defendant B&G Foods, Inc.*

---

[3] At minimum, this creates significant doubt as to whether Plaintiff was harmed and relied on the language that he claimed misled him. *See, e.g., Kraus*, 2022 WL 4642170, at *5 ("In false advertising cases, the only way a plaintiff can show that he was injured as a result of the defendant's representations is to prove that he saw and relied on the statements at issue.").