**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Charles Strow, individually and on behalf of all others similarly situated, | Case No.: 1:21-cv-05104 |
| Plaintiff, | Judge Steven C. Seeger |
| – against – | |
| B&G Foods, Inc., | |
| Defendant. | |

**DEFENDANT B&G FOODS' OPPOSTION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

ARGUMENT ...................................................................................................... 3

I.      PLAINTIFF HAS NOT SATISFIED THE REQUIREMENTS OF RULE 23(A) ............. 4

      A.      Plaintiff Is Not an Adequate Class Representative .................................................. 4

            1.      Plaintiff Lacks Credibility and Is Subject to Unique Defenses ................. 4

            2.      Plaintiff Is Not in Control of This Case ...................................... 6

      B.      Plaintiff's Lawyer Is Inadequate ......................................................................... 7

            1.      Plaintiff's Lawyer Violated the Rules of Professional Conduct ................ 7

            2.      Plaintiff's Lawyer's Other Conduct Renders Him Inadequate ................ 7

      C.      Plaintiff Has Not Proven Ascertainability, Typicality, or Numerosity .................. 8

            1.      Plaintiff Has Not Proven That the Proposed Class Is Ascertainable ......... 8

            2.      Plaintiff Has Not Proven Numerosity ...................................... 10

II.     PLAINTIFF HAS NOT PROVEN PREDOMINANCE UNDER RULE 23(B) .............. 11

      A.      Individualized Issues of Injury and Causation Predominate ................................ 11

      B.      The Matthews Declaration Does Not Prove Class-Wide Injury ......................... 13

      C.      Plaintiff Has Not Proven that a Viable Method Exists for Assessing Class-Wide Damages ..................................................................................................... 14

CONCLUSION .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**PAGE(S)**

## CASES

*Anderson v. Weinert Enterprises, Inc.,*
  986 F.3d 773 (7th Cir. 2021) ................................................................. 11

*Baldwin v. Star Sci., Inc.,*
  78 F. Supp. 3d 724 (N.D. Ill. 2015) ...................................................... 12

*Bank of Trenton v. Schnuck Markets, Inc.,*
  887 F.3d 803 (7th Cir. 2018) ................................................................. 14

*Blue Cross & Blue Shield Ass'n v. Am. Express Co.,*
  467 F.3d 634 (7th Cir. 2006) ................................................................... 8

*Bodner v. Oreck Direct, LLC,*
  No. C 06-4756 MHP, 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007) ..... 6

*Castano v. Am. Tobacco Co.,*
  84 F.3d 734 ............................................................................................ 13

*CE Design Ltd. v. King Architectural Metals, Inc.,*
  637 F.3d 721 (7th Cir. 2011) ..................................................... 4, 6, 10

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) ................................................................................ 14

*Creative Montessori Learning Centers v. Ashford Gear LLC,*
  662 F.3d 913 (7th Cir. 2011) ................................................................... 7

*Driver v. Marion Cnty. Sheriff,*
  859 F.3d 489 (7th Cir. 2017) ................................................................. 10

*Elizarri by Perez v. Sheriff of Cook County,*
  No. 17-CV-8120-SCS, 2022 WL 767487 (N.D. Ill. Mar. 14, 2022) ...... 10

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.,*
  29 F.4th 839 (7th Cir. 2022) ............................................................. 4, 11

*Hyderi v. Washington Mut. Bank, FA,*
  235 F.R.D. 390 (N.D. Ill. 2006) ............................................................ 13

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.,*
  No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ............. 15

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
    2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ...................................................... 10, 13

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ............................................................................ 5

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D. Ill. 1990) .......................................................................... 5

*Kohen v. Pacific Inv. Mgmt Co. LLC*,
    571 F.3d 672 (7th Cir.2009) ............................................................................... 10

*Korsmo v. Am. Honda Motor Co.*,
    No. 11 C 1176, 2012 WL 1655969 (N.D. Ill. May 10, 2012) ................................. 10

*Lipton v. Chattem, Inc.*,
    289 F.R.D. 456 (N.D. Ill. February 8, 2013) ...................................................... 11, 12

*Maeda v. Kennedy Endeavors, Inc.*,
    No. 18-00459 JAO-WRP, 2021 WL 2582574 (D. Haw. June 23, 2021) ................... 6

*Marquita Sanders v. W & W Wholesale Inc.*,
    No. 11 C 3557, 2012 WL 3987629 (N.D. Ill. Sept. 11, 2012) ................................. 5

*Massengill v. Bd. of Ed., Antioch Cmty. High Sch.*,
    88 F.R.D. 181 (N.D. Ill. 1980) ........................................................................... 4

*Meachum v. Outdoor World Corp.*,
    171 Misc. 2d 354, 654 N.Y.S. 2d 240 (1996) ...................................................... 7

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ............................................................................. 3

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ......................................................................... *passim*

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ........................................................................... 12

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
    254 F. Supp. 3d 1007 (N.D. Ill. 2017) ................................................................ 6

*Pope v. Harvard Banschares, Inc.*,
    240 F.R.D. 383 (N.D. Ill. 2006) ........................................................................ 5

*Randall v. Rolls-Royce Corp.*,
637 F.3d 818 (7th Cir. 2011) ......................................................................... 5

*Randolph v. Crown Asset Mgmt., LLC*,
254 F.R.D. 513 (N.D. Ill. 2008).................................................................... 11

*Smith v. NVR, Inc.*,
No. 17 C 8328, 2019 WL 6838938 (N.D. Ill. Dec. 16, 2019) ..................... 13

*Thorogood v. Sears, Roebuck & Co.*,
547 F.3d 742 (7th Cir. 2008) ....................................................................... 13

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021).......................................................................... 1, 10, 12

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
475 F.3d 824 (7th Cir. 2007) ....................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes et al.*,
564 U.S. 338 (2011).........................................................................................4

*Yumul v. Smart Balance*,
2010 WL 4352723 (C.D. Cal. Oct. 8, 2010)...................................................7

**RULES**

Federal Rule of Civil Procedure 23 ...................................................... *passim*

Illinois Rule of Professional Conduct 7.3(c)...................................................7

Defendant B&G Foods, Inc. respectfully submits this memorandum in Opposition to Plaintiff Charles Strow's Motion for Class Certification (Dkt. 60).

## INTRODUCTION

B&G Foods is an American food company that has delivered delicious, high-quality foods to the nation's tables for 130 years. Plaintiff is a felon with a bench warrant who was recruited by his lawyer to sue B&G Foods. He claims he bought butter-flavor no-stick spray—a butter substitute—because he thought it contained butter, and that he and a "class" of consumers were uniformly misled by this feature and paid a price premium for it. This case is part of a longer saga, documented by this Court and others, of Plaintiff's lawyer acting as "a wrecking ball when it comes to imposing attorneys' fees on other people." That wreckage should end here: Plaintiff has not met his burden of proving any of the elements for certifying a class.

Plaintiff and his lawyer are not adequate to represent any class. Plaintiff is subject to unique impeachment because, among other things, he testified untruthfully about being a felon and spoliated evidence after talking to his lawyer. He is obviously his lawyer's instrumentality, not a fiduciary carefully monitoring the case to ensure that his lawyer does not sacrifice class interests for personal gain. Plaintiff's lawyer's ethical violations in engineering this lawsuit, seriatim litigation (he files a lawsuit every 2-3 days), and failure to protect the alleged class render him inadequate, too. Nor are the other elements of Rule 23(a) met. Plaintiff offers no evidence to prove numerosity—notwithstanding this Court's opinion holding that numerosity cannot be presumed—and he cannot show typicality.

Perhaps the most glaring flaw in Plaintiff's motion is that he has not offered any evidence to prove that any, much less every unnamed member of the putative class suffered any injury. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021) ("Every class member must have

Article III standing in order to recover individual damages. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."). The product is marketed, advertised, and labeled as having fewer calories and less fat than butter. People who bought the product for this reason, or for convenience, efficacy, or for any number of other reasons, have not suffered any harm: They were not misled and willingly paid for exactly what they received. As explained in B&G Foods' concurrently filed *Daubert* motion, the declaration of Plaintiff's purported expert Andrea Matthews, Ph.D., is inadmissible because it is exclusively based on an intentionally biased survey. In any event, Dr. Matthews testified that her work does not analyze whether any feature of the label had any effect on price or demand.

As shown in the unrefuted expert declaration of Robert Palmatier, Ph.D., consumers are equally willing to buy the product, and for the same amount, whether it is called "butter flavor" or "butter" spray. His survey was textbook: One group of participants was shown the label in the Complaint; another group was shown the exact same label, except "Butter" was replaced with "Butter Flavor." Both groups were asked how likely they were to buy the product and how much they were willing to pay. Both group's answers were statistically identical; if anything, consumers slightly preferred the product marked "butter flavor"—an unsurprising result for a product made for people who want to avoid the calories, fat, and messiness of butter. Under these circumstances, Plaintiff cannot show predominance or ascertainability.

Plaintiff separately has not met his burden under *Comcast* of proving that he has a valid method for proving class-wide damages. Dr. Matthews did not prepare a valid model; she simply claims that she would perform unspecified analyses based on data she does not have. Leaving aside Dr. Palmatier's undisputed survey, it is obvious that consumers could not have paid a price premium because the accused spray oil costs half of butter-flavor PAM, its main competitor.

## FACTUAL BACKGROUND

B&G Foods recently acquired Crisco® No-Stick Spray ("the product")—a butter substitute that provides the flavor of butter without the fat, calories, or messiness. Before February 2022, the front of the product label stated: "Butter No-Stick Spray," "0 calories," "0g sat fat," and "✓For Fat Free." (Declaration of Matthew Borden ("Borden Decl."), Ex. 1.) The side stated: "Buttery Flavor For Your Food Without The Butter" and compared the product's fat and calories with those in butter. In February 2022, B&G updated the front of the label to say "Butter Flavored No-Stick Spray" instead of "Butter Spray."

The Complaint claims that Plaintiff bought the product because the original label led him to believe it contained butter, and that he paid a "price premium" because other spray oils stated they were butter flavored. (First Amended Complaint ("FAC") ¶¶ 1, 27-28, 72.) The product, however, cost less than its competitors when the Complaint alleges Plaintiff purchased it. For example, a 5oz can of PAM butter spray cost $3.35 at Walmart ($0.67/oz), whereas one 6oz can of Crisco butter spray cost $2.18 at Walmart ($0.36/oz). (Borden Decl., Exs. 2-3.) Plaintiff seeks to certify a class of people who were supposedly similarly "injured." (FAC ¶ 77.)

## ARGUMENT

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Where, as here, the plaintiff seeks to certify a class under Rule 23(b)(3), he must also show "(1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Id.* To evaluate whether a party has met that high burden, courts must

"probe behind the pleadings"—an analysis that will frequently "overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes et al.*, 564 U.S. 338, 351 (2011). Class certification is an evidentiary motion, and Plaintiff bears the burden of proof on every element. *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022).

## I.     PLAINTIFF HAS NOT SATISFIED THE REQUIREMENTS OF RULE 23(A)

Plaintiff must prove that the proposed class "satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). He "must also show … that the class is indeed identifiable as a class"—that is, "that the class can be ascertained." *Id.* (citation omitted). Plaintiff has failed to meet any of these requirements.

### A.     Plaintiff Is Not an Adequate Class Representative

A plaintiff is inadequate if there exists "even an arguable defense peculiar to [him]," if he "has serious credibility problems," *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 726 (7th Cir. 2011) (citations omitted), or if he is not in control of the case, *Massengill v. Bd. of Ed., Antioch Cmty. High Sch*., 88 F.R.D. 181, 186 (N.D. Ill. 1980). Here, Plaintiff is inadequate on all three grounds.

#### 1.     Plaintiff Lacks Credibility and Is Subject to Unique Defenses

Plaintiff is inadequate for many reasons, including that (i) he is a convicted felon with a bench warrant for car theft in Kentucky (Borden Decl., Ex. 4), (ii) he testified untruthfully about his criminal past under oath (*id*., Ex. 5 at 88:14-90:17) (iii) he testified that he spoliated the most important piece of evidence in this case—the actual product he supposedly bought after talking to his lawyer (*id.* at 65:17-24), (iv) testified that he was not injured (*id*. at 91:3-5), (v) testified that he bought the product with the new label on it (*id*. at 58:19-59:14), and (vi) he was recruited by his lawyer to sue B&G Foods (*id*. at 40:19-42:23, 44:8-45:7) and used the product for a year

and a half beforehand, entirely satisfied with its taste and functionality (*id.* at 19:19-20:18, 21:16-22:5, 34:19-35:24.)

Each of these facts, alone, renders Plaintiff inadequate. Together, they overdetermine Plaintiff's inadequacy. His felony alone is disqualifying. *See, e.g.*, *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104-05 (N.D. Ill. 2013) (finding plaintiff's five-year-old felony fraud conviction "sufficient by itself to render [plaintiff] an inadequate representative" because jury would likely "focus on [his] credibility and not the claims of a potential class"); *Marquita Sanders v. W & W Wholesale Inc.*, No. 11 C 3557, 2012 WL 3987629, at *5 (N.D. Ill. Sept. 11, 2012) (finding plaintiff inadequate due to "multiple convictions for felony retail theft").

Felony aside, no jury could find Plaintiff credible because he was untruthful under oath. *See Pope v. Harvard Banschares, Inc*., 240 F.R.D. 383, 390 (N.D. Ill. 2006) ("[A] plaintiff with credibility problems [has] interests antagonistic to the class.") Courts have declined to certify classes for far less. In *Kaplan v. Pomerantz*, for instance, the Court decertified a class after the plaintiff falsely testified during a deposition that he had not been involved in other lawsuits and that his wife did not hold certain stocks. 132 F.R.D. 504, 508-09 (N.D. Ill. 1990). The statements were of only "marginal relevance to th[e] lawsuit," but because "honesty and integrity" are "important considerations in allowing [a plaintiff] to represent a class," a class should not be certified where the representative plaintiff "evince[d] a willingness to give intentionally false and misleading testimony in an effort to further his interests." *Id.* at 510. The same is true here.

Separately, Plaintiff's vulnerability to unique defenses is also disqualifying. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) ("[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives.") Plaintiff's testimony shows either that he purchased the product after his lawyer filed suit or that

he made up his allegations that the absence of the word "flavor" caused him to buy the product. (*See* Dkt. 70 at 4-6; Borden Decl., Ex. 5 at 59:4-7) Either way, he is subject to a unique, dispositive defense. In *CE Design*, the Seventh Circuit vacated class certification because it was unresolved whether plaintiff had provided consent to receive the very "junk faxes" the action complained about. 637 F.3d at 725. Such a plaintiff "cannot be an adequate," the court held, because "even [this] *arguable* defense" against his claim could unfairly affect the whole class. *Id.* at 726; *accord Oshana*, 472 F.3d at 514 (representative inadequate where she admitted she "did not see [certain] advertisements" and "knew fountain and bottled Diet Coke were different because bottled Diet Coke tasted better," raising "specific factual defenses").

### 2.      Plaintiff Is Not in Control of This Case

A "class representative is plainly insufficient" if he is so unengaged with the case that he is "just a place-holder for the attorneys driving [it]." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1027 (N.D. Ill. 2017). That is true here. Plaintiff testified that he did not know who his own attorneys were (local counsel, who presumably are sharing fees with his lawyer) and had not signed an engagement letter with them. (Borden Decl., Ex. 5 at 9:12-10:14; 11:15-13:5.)  He testified to purchasing a version of the product that lacked the very language his Complaint claims is misleading (*id.* at 58:19-59:14) and contradicted other allegations in the Complaint. (*Compare* FAC ¶¶ 43-47 *with* Borden Decl., Ex. 5 at 31:7-12)

Plaintiff also testified that his lawyer solicited him to file this case. (*Id.* at 40:19-42:23, 44:8-45:7). Whether this reveals Plaintiff's inadequacy or his lawyer's, it shows Rule 23(a)(4) is not met. *See Maeda v. Kennedy Endeavors, Inc.*, No. 18-00459 JAO-WRP, 2021 WL 2582574, at *13 (D. Haw. June 23, 2021) ("the fact that Plaintiffs learned about the products' manufacture outside Hawai'i from [their lawyer] … is concerning, and raises questions about what is driving this action"); *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, at *2

(N.D. Cal. Apr. 25, 2007) ("Solicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification."); *Meachum v. Outdoor World Corp.*, 171 Misc. 2d 354, 654 N.Y.S.2d 240, 369 (1996) (same).

### B. Plaintiff's Lawyer Is Inadequate

Plaintiff's lawyer has serially misused the legal system and committed multiple ethical violations in this case. He, too, is inadequate.

### 1. Plaintiff's Lawyer Violated the Rules of Professional Conduct

Plaintiff's lawyer manufactured this litigation through a misleading Facebook solicitation that was not marked with "Advertising Material" as required by Illinois Rule of Professional Conduct 7.3(c). (Borden Decl., Ex. 5 at 35:19-24.) It invited Plaintiff to join an "investigation," (Dkt. 41-0 at 1-2) when there was no investigation (Boden Decl., Ex. 5 at 40:19-42:23), and Plaintiff did not understand that he was being recruited or that his lawyer was seeking plaintiffs to sue B&G Foods, (*Id*. & at 44:8-45:7). This violated Rule 7.1 Courts have repeatedly held that unethical conduct by a lawyer seeking to represent a class is disqualifying. *Yumul v. Smart Balance*, 2010 WL 4352723, at *4 (C.D. Cal. Oct. 8, 2010) ("In determining whether to certify a class in this case, however, unethical conduct by plaintiff's counsel would be a relevant consideration.") (collecting cases); In *Creative Montessori Learning Centers v. Ashford Gear LLC*, the Court vacated an order granting certification where the lawyers obtained evidence by misrepresenting that they were not soliciting it to file a class action, reasoning that "class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class." 662 F.3d 913, 917 (7th Cir. 2011) (collecting cases).

### 2. Plaintiff's Lawyer's Other Conduct Renders Him Inadequate

This case—put together in less than three hours—is but one example of Plaintiff's lawyer's blunderbuss of ill-conceived lawsuits. "He files about three lawsuits a week" (Borden

Decl., Ex. 6) and, as this Court noted, they "have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad." *Guzman v. WalMart*, Case No. 1:22-cv-3465-SCS, Dkt. 23 at 6. Other Courts have made similarly observations. (*See, e.g.*, Borden Decl., Ex. 7 at 19 (Order in *Brownell v. Starbucks Coffee Co.*, 5:22-cv-01199-FJS (N.D.N.Y.) (Dkt. 24) directing Plaintiff's lawyer to "show cause as to why this Court should not sanction him for continually filing frivolous lawsuits in this District").)

Even if the suits in his portfolio had merit, Plaintiff's lawyer does not, and could not, pay adequate attention to them. Here, for example, he selected a plaintiff with a felony warrant who testified that he bought a product that was not depicted in the Complaint, failed to direct Plaintiff not to destroy evidence, and let Plaintiff testify inaccurately about his criminal history without correcting the record. Discovery closed on April 29, 2023, yet Plaintiff's lawyer has not taken a single deposition and failed to provide his purported expert with any evidence to rely on. To quote Judge Easterbrook, "[i]f these lawyers were physicians, their patients would be dead." *Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 638 (7th Cir. 2006).

### C. Plaintiff Has Not Proven Ascertainability, Typicality, or Numerosity

#### 1. Plaintiff Has Not Proven That the Proposed Class Is Ascertainable

It is "the plaintiff's burden to prove … that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. Plaintiff cannot, for precisely the reasons explained in *Oshana*. There, the plaintiff alleged that Coke "tricked consumers into believing that fountain Diet Coke and bottled Diet Coke have the same ingredients." *Id.* at 509. Coke had advertised "that Diet Coke would be sweetened with 100% NutraSweet® brand aspartame," when in fact "fountain Diet Coke is sweetened with a mixture of aspartame and saccharin," a different form of sweetener. *Id*. The plaintiff claimed, as Plaintiff does here, that Coke's misleading advertisement violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and moved to certify a class that

included "[a]ll individuals who purchased for consumption and not resale fountain Diet Coke in ... Illinois" during a multi-year window following the ad's run. *Id* at 510.

The district court denied the motion because the proposed class "was not sufficiently ascertainable." *Id.* In affirming, the Seventh Circuit explained that the ICFA requires "that actual damages were proximately caused by the deception," which in turn requires that "plaintiff was deceived in some manner and damaged by [it]." *Id.* at 513-14. The proposed class would have included "countless" members who "were not deceived" by the ad. *Id.* at 514. "Some people may have bought fountain Diet Coke *because* it contained saccharin," the court explained, "and some people may have bought fountain Diet Coke *even though* it had saccharin." *Id*. (emphasis in original). Since the proposed class "could include millions who were not deceived and thus ha[d] no grievance under the ICFA," it could not be certified. *Id.*

The same problem is fatal here. The proposed class includes anyone who purchased the product within the statute of limitations. (FAC ¶ 77.) As in *Oshana*, this includes people who cannot "show any damage, let alone damage proximately caused by [B&G's] alleged deception." 472 F.3d at 514. Some consumers bought the product *because* it did not contain butter (they were watching their waistlines), and some bought it *even though* it did not contain butter (they loved that buttery flavor but wanted the convenience of a spray). Dr. Palmatier's survey proves that consumers are willing to purchase the product just as often, and to pay just as much for it, when its label says "Butter Flavor" rather than simply "Butter," suggesting, as *Oshana* notes, that preference, not confusion, guides the choices of consumers in the proposed class. (Palmatier Decl. at ¶ 7. In contrast, Dr. Matthews conceded that consumers bought the product for any number of reasons and that her survey did not assess whether the label influenced the price of, or demand for, the product. (Borden Decl., Ex. 8 at 69:2-71:10.)

*Oshana*'s focus on each putative class member's injury was recently affirmed by the Supreme Court in *TransUnion*, 141 S. Ct. at 2205 (every class member must prove injury). Because Plaintiff has not proven that any proposed class member suffered "actual damages" that were "proximately caused by the [alleged] deception," the proposed class "is not sufficiently identifiable or definite," and cannot be certified. *Oshana*, 472 F.3d at 515; *see also Kohen v. Pacific Inv. Mgmt Co. LLC*, 571 F.3d 672, 677 (7th Cir.2009) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."); *Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 494 (7th Cir. 2017) (recognizing *Oshana* applicability where class could include people "who were not deceived"); *Korsmo v. Am. Honda Motor Co.*, No. 11 C 1176, 2012 WL 1655969, at *5 (N.D. Ill. May 10, 2012) (denying class certification because "individual inquiries would be necessary to determine each buyer's motivations for buying a Honda Certified Used Vehicle and which buyers, if any, were deceived by the phrase "Honda Certified Used Car"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, No. 05 C 2623, 2007 WL 4287511, at *5 (N.D. Ill. Dec. 4, 2007) (class certification "doom[ed]" where "the proposed class definition would include many class members who were not deceived and suffered no damage").[1]

### 2. Plaintiff Has Not Proven Numerosity

Plaintiff assumes that his purported class satisfies numerosity. (Mot. at 5.) But he has not offered a single piece of evidence to support that assumption, as he must, to carry his burden. *See Elizarri by Perez v. Sheriff of Cook County*, No. 17-CV-8120-SCS, 2022 WL 767487, *10-11 (N.D. Ill. Mar. 14, 2022) (Seeger, J.) (denying class certification because plaintiff failed to offer

---

[1] For the reasons above, Plaintiff has also failed to prove that his claims are typical under Rule 23. *See CE Design*, Ltd., 637 F.3d at 724 (question of typicality often "merges with" question of adequacy); *Oshana*, 472 F.3d at 514 (plaintiff's claims "not typical of the putative class" for "same reasons" class was not ascertainable).

evidence of numerosity, finding that "so-called 'common-sense' assumptions are nothing more than speculation" unless "there is underlying evidence upon which to base [them]" (citation omitted)); *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 778 (7th Cir. 2021) ("[P]laintiff 'cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity.'") (quotation omitted).

## II.     PLAINTIFF HAS NOT PROVEN PREDOMINANCE UNDER RULE 23(B)

To satisfy Rule 23(b)(3), Plaintiff must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement, which is "far more demanding" than the Rule 23(a) commonality requirement, "is not satisfied where liability determinations are individual and fact-intensive." *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 462 (N.D. Ill. February 8, 2013) (citations omitted). Here, every key issue in the case is individualized.

### A.     Individualized Issues of Injury and Causation Predominate

"An individual question is one where members of a proposed class will need to present evidence that varies from member to member." *Gorss Motels*, 29 F.4th at 843–44. To determine whether common issues predominate over individual ones, a court must first evaluate "the elements of the underlying cause[s] of action." *Lipton*, 289 F.R.D. at 462.[2] Plaintiff never discusses the elements of his underlying claims.[3] Under Article III, he must, at minimum, prove

---

[2] Plaintiff argues that "predominance is satisfied" where a defendant "act[s] wrongfully in the same basic manner towards an entire class." (Mot. at 6 (quoting *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 520 (N.D. Ill. 2008). This misstates the standard. *See, e.g., Lipton*, 289 F.R.D. at 462 ("Predominance is not satisfied where liability determinations are individual and fact-intensive."). *Randolph* is uninstructive here because it involved identical claims "arising out of standard documents." 254 F.R.D. at 519. Here, by contrast, the proposed class is filled with people who were not injured, and who bought the product for a salmagundi of reasons, which makes it anything but uniform.

[3] This failure alone undermines predominance: Plaintiff "bear[s] the burden of demonstrating compliance with Rule 23," *Gorss Motels*, 29 F.4th at 843, and the "[m]ere assertion by class counsel that common

11

that every class member suffered an injury that was caused by B&G Foods, which in a false advertising case means that every class member was misled by the label and that the misrepresentation caused them harm. *TransUnion*, 141 S. Ct. at 2205.

Plaintiff claims that "[i]f each class member were to pursue his or her claim individually, the evidence to support those individual claims would be identical." (Mot. at 6.) But just the opposite is true. To determine whether a proposed class member was injured by the product's label, the Court must make two critical, individualized determinations. First, was the person misled by the label? Second, did the presence or absence of butter influence their decision to buy the product? B&G Foods is entitled to cross-examine anyone regarding these issues.

Courts have denied class certification for lack of predominance in cases nearly identical to this one. In *Lipton*, for example, plaintiff alleged that Dexatrim, a weight loss product, "was contaminated with a toxic substance, hexavalent chromium." 289 F.R.D. at 458. The court denied class certification because, like here, "whether a given class member was deceived by [the manufacturer's] labeling of Dexatrim and whether she suffered damages as a result … [could] be resolved only on an individual basis." *Id.* at 462. The problem, like here, was that "[t]he proposed class includes individuals who: (1) were unaware of the presence of hexavalent chromium in Dexatrim and who would not have purchased the product had they been so aware; (2) were unaware of the presence of hexavalent chromium but may have still purchased the product had they been so aware; and (3) were aware of the presence of hexavalent chromium and purchased the product anyway." *Id.* Plaintiff's case here is even weaker because, while nobody

---

issues predominate is not enough," *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). In any case, Plaintiff's claims require an individualized showing that B&G Foods' alleged deception caused the harm. *See, e.g.*, *Lipton*, 289 F.R.D. at 462 (ICFA, common law fraud, and unjust enrichment); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 739, 741 (N.D. Ill. 2015) (implied warranty); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (negligent misrepresentation).

would have purchased Dexatrim *because* it contained hexavalent chromium, many consumers purchased the product here precisely *because* it did not contain butter.

Courts have denied class certification in other, similar cases for the same reason. *See, e.g.*, *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 747 (7th Cir. 2008) (reversing class certification in case concerning deceptive advertisement of "stainless steel" clothes dryers where "a host of features … might matter to consumers" and court would need to determine for "[e]ach class member" why "he likes stainless steel"); *Oshana*, 472 F.3d at 514 (discussed above); *Smith v. NVR, Inc.*, No. 17 C 8328, 2019 WL 6838938, at *4 (N.D. Ill. Dec. 16, 2019) (denying class certification in case concerning deceptive advertisement of cabinets because "some purchasers prefer one architectural cabinet style while others prefer other styles"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, No. 05 C 2623, 2007 WL 4287511, at *5 (N.D. Ill. Dec. 4, 2007) (denying class certification in case concerning Craftsman's "Made in USA" label because putative class members who "bought Craftsman tools with the knowledge that those tools were not made in the United States" could not "prove deception").[4]

### B. The Matthews Declaration Does Not Prove Class-Wide Injury

Plaintiff attempts to spackle over this gaping hole in his case by submitting the Matthews declaration. As detailed in B&G Foods' concurrently filed *Daubert* motion, her declaration is inadmissible both because she exclusively relies on her own surveys, which place a thumb on the

---

[4] Because predominance is lacking, Plaintiff urges the court to certify a class for any "common issues" that exist under Rule 23(c)(4). (Mot. at 11-13.) However, a "class action movant cannot gerrymander predominance by suggesting that only a single issue be certified for class treatment (in which, by definition, it will 'predominate') when other individualized issues will dominate the resolution of the class members' claims." *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006) (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir. 1996) ("Reading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.")).

scale in at least five different ways. In any event, Dr. Matthews admitted that "people could buy the product for any number of reasons," and that her survey does not shed any light on whether the supposed misrepresentation affects price or demand. (Matthews Dep. 69:2-71:10.) Plaintiff offers no evidence in support of his "price premium" allegations, which are plainly inaccurate because B&G Foods charged more than 50% *less* than its main competitor, Pam, whose product is labeled "Butter Flavor." (Borden Decl. Exs. 2-3.)

Even if the Matthews Declaration were not excluded, Plaintiff's theory that B&G Foods' labeling increased the price for all consumers (Mot. at 8), thereby injuring everyone, is non-viable. In *County Bank of Trenton v. Schnuck Markets, Inc*., 887 F.3d 803, 822 (7th Cir. 2018), the Seventh Circuit held that "ICFA plaintiffs cannot rely on a generalized 'market theory' of causation claiming that the defendant 'inflate[d] the cost of its product far above what it could have charged had the' defendant not 'misled consumers.'" (quotations omitted, alteration in original). "To show proximate cause, the 'plaintiff must actually be deceived by a statement or omission that is made by the defendant;' the plaintiff cannot rest on vague accusations about inadequate disclosures and resulting price effects in the marketplace." *Id*.

### C. Plaintiff Has Not Proven that a Viable Method Exists for Assessing Class-Wide Damages

Plaintiff also fails to provide a viable method to prove damages on a class-wide basis, which is separately fatal to his motion. See *Comcast Corp. v. Behrend*, 569 U.S. 27, 1433-34 (2013) (to prove predominance, plaintiff must present damages model that is "susceptible of measurement across the entire class"). Plaintiff proposes some type of "conjoint analysis" or "hedonic analysis of actual pricing data"—neither of which Dr. Matthews actually performed—based on evidence she has never seen. (Mot. at 8; Matthew Decl. (Dkt. 60-3) ¶¶ 167-68; Matthews Dep. at 88-91.) This fails to meet his burden under *Comcast*. The declaration is

inadmissible for the reasons described in B&G Foods' *Daubert* motion. Claiming that he will someday do a conjoint analysis is like a prosecutor saying "someday, I will prove guilt using blood spatter evidence"—there is no guarantee that this is true, and all the details are missing. Dr. Matthews does not know whether the price changed after the label changed (it did not (Borden Decl. Ex. 11)), has not identified any substitute goods, and did not do any analysis of prices for sprays marked "butter flavor" as opposed to the product (which is cheaper). There is no way to conclude that her damages model would have any validity, and the undisputed Palmatier Declaration shows that no price premium could exist. *See In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *56 (N.D. Ill. Mar. 31, 2017) (after survey data excluded, class certification must be denied because plaintiffs "do not have a common damages formula that they can rely on").

In any event, how much anyone would be willing to pay is an individualized issue. People who wanted the product as it was (apparently everyone but Plaintiff) got exactly what they wanted at a price they were willing to pay. Plaintiff seeks to "prove damages through averages" in a situation where "[c]onsumers do not have identical preferences." *Fluidmaster,* 2017 WL 1196990, at *58 (citation omitted). A plaintiff cannot "measure the 'loss of the benefit of each class member's bargain'" through a one-size-fits-all price premium when "some consumers may place no value on [the presence or absence of butter] and thus lose nothing in this bargain." *Id*. "[A] theory that awards damages to people who were not damaged seems to be foreclosed by" any cause of action for which "some kind of damage must result" from the "unlawful practice" alleged, which is true of all Plaintiff's claims. *Id.* at 59.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be denied.

Dated: August 1, 2023

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

Matthew Borden, Esq. (*Pro Hac Vice*)
borden@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 599-0210

*Attorneys for Defendant B&G Foods, Inc.*