# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Charles Strow, individually and on behalf of all others similarly situated, | 1:21-cv-05104 |
| Plaintiff, | Hon. Steven C. Seeger |
| - against - | |
| B&G Foods, Inc., | |
| Defendant | |

Plaintiff's Reply Memorandum of Law in Further Support of
Plaintiff's Motion for Class Certification

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

LEGAL STANDARDS .................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.      REQUIREMENTS OF RULE 23(a) ARE SATISFIED ...................................................... 2

          A.     Plaintiff's Adequacy is Established .......................................................................... 2

          B.     Plaintiff's Counsel is Adequate ................................................................................ 5

          C.     Ascertainability, Typicality, and Numerosity are Established ................................ 5

II.     REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ................................................ 7

          A.     Common Questions Predominate ............................................................................. 7

          B.     Class-Wide Injury and Viable Damages Methodology Exists ................................ 9

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................. 8

*Amgen Inc. v. Conn. Ret. Plans & Trust Fund*,
    568 U.S. 455 (2013) ............................................................................................. 8, 9

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ..................................................................................... 1

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ................................................................................... 6

*Bell v. PNC Bank Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ..................................................................................... 8

*Benson v. Newell Brands, Inc.*,
    No. 19-cv-6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ............................... 10

*Brazil v. Dole Packaged Foods, LLC*,
    No. 12-cv-1831, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ............................. 12

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ................................................................................ 9, 10

*Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*,
    797 F.3d 426 (7th Cir. 2015) ................................................................................... 10

*Creative Montessori Learning Ctr. v. Ashford Gear, LLC*,
    No. 09-cv-3963, 2011 WL 3273078 (N.D. Ill. July 27, 2011) .................................. 5

*De La Fuente v. Stokley-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir.1983) ...................................................................................... 6

*Eike v. Allergan, Inc.*,
    850 F.3d 315 (7th Cir. 2017) ................................................................................... 11

*Eike v. Allergan, Inc.*,
    No. 12-cv-1141, 2016 WL 4272127 (S.D. Ill. Aug. 15, 2016) ................................ 11

*Feldman v. Motorola, Inc.*,
    No. 90-cv-5887, 1992 WL 415382 (N.D. Ill. Nov. 5, 1992) ..................................... 5

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) ............................................................................. 11

*Halverson v. Convenient Food Mart, Inc.*,
    458 F.2d 927 (7th Cir.1972) ...................................................................................... 5

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
 No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ............................................ 10

*In re Neopharm, Inc. Sec. Litig.*,
 225 F.R.D. 563 (N.D. Ill. 2004) ........................................................................................... 6

*Lacy v. Cook County, Illinois*,
 897 F.3d 847 (7th Cir. 2018) ............................................................................................... 3

*Lacy v. Dart*,
 No. 14-cv-6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015) ............................................ 3

*Lemon v. Int'l Union of Operating Eng'rs*,
 216 F.3d 577 (7th Cir. 2000) ............................................................................................... 8

*Levie v. Sears, Roebuck & Co.*,
 496 F. Supp. 2d 944 (N.D. Ill. 2007) .................................................................................. 3

*Mednick v. Precor, Inc.*,
 320 F.R.D. 140 (N.D. Ill. 2017) ......................................................................................... 11

*Messner v. Northshore Univ. HealthSystem*,
 669 F.3d 802 (7th Cir. 2012) ............................................................................................... 1

*Orr v. Shicker*,
 953 F.3d 490 (7th Cir. 2020) ............................................................................................... 7

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*,
 231 F.R.D. 280 (N.D. Ill. 2005) ........................................................................................... 6

*P.J.'s Concrete Pumping Serv., Inc. v. Nextel W. Corp.*,
 345 Ill. App. 3d 992 (2004) ................................................................................................. 8

*Parish v. Sheriff of Cook County*,
 No. 07-cv-4369, 2008 WL 4812875 (N.D. Ill. Oct. 24, 2008) ............................................ 3

*Ploss as Tr. for Harry Ploss Tr. DTD 8/16/1993 v. Kraft Foods Grp., Inc.*,
 431 F. Supp. 3d 1003 (N.D. Ill. 2020) ................................................................................ 9

*Pruitt v. Personal Staffing Group, LLC*,
 No. 16-cv-5079, 2020 WL 3050330 (N.D. Ill. June 8, 2020) ............................................. 2

*Randolph v. Crown Asset Mgmt., LLC*,
 254 F.R.D. 513 (N.D. Ill. 2008) ........................................................................................... 8

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
 704 F.3d 489 (7th Cir. 2013) ............................................................................................... 5

*Smith v. Nike Retail Services, Inc.*,
 234 F.R.D. 648 (N.D. Ill. 2006) ........................................................................................... 6

*Streeter v. Sheriff of Cook County*,
    256 F.R.D. 609 (N.D. Ill. 2009) ............................................................................................... 3

*Strow v. B&G Foods, Inc.*,
    No. 21-cv-5104, 2022 WL 4608948 (N.D. Ill. Sept. 30, 2022) ............................................. 1

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................................ 8, 9

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-cv-2724, 2014 WL 2191901 (N.D. Cal. May 23, 2014) ......................................... 12

*Wood v. Capital One Auto Finance, Inc.*,
    No. 06-cv-7, 2006 WL 6627680 (E.D. Wis. Sept. 19, 2006) ................................................ 3

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................................................... 1

Fed. R. Civ. P. 23(a)(1) ................................................................................................................. 7

Fed. R. Civ. P. 23(a)(3) ................................................................................................................. 6

Fed. R. Civ. P. 23(b) ................................................................................................................. 1, 8

## INTRODUCTION

Plaintiff Charles Strow ("Plaintiff") submits the following Reply to Defendant B&G Foods' Opposition to Plaintiff's Motion for Class Certification ("Opposition" or "Def. Opp.") and in further support of his Motion for Class Certification. ECF Nos. 60, 71.

## FACTUAL BACKGROUND

Plaintiff filed this action on September 27, 2021, alleging that the representation "Butter – No-Stick Spray" was "misleading because the Product does not contain any butter, as shown on the ingredient list." Complaint, ECF No. 1 at ¶ 27. Subsequently, the First Amended Complaint ("FAC") was filed on November 12, 2021.

Following Defendant's Motion seeking dismissal, filed on February 10, 2022, the Court denied the "motion to dismiss the complaint based on the argument that the complaint did not meet the plausibility standard" and permitted all of Plaintiff's claims to proceed, because "[Plaintiff's] reading [of the Product's label] is not so implausible that it fails to state a claim." *Strow v. B&G Foods, Inc.*, No. 21-cv-5104, 2022 WL 4608948, at *10 (N.D. Ill. Sept. 30, 2022).

Defendant's Second Motion to Dismiss, filed on February 8, 2023, was also denied in its entirety. ECF No. 69.

Plaintiff filed his Motion for Class Certification on May 26, 2023. ECF No. 60. Defendant filed its Opposition on August 1, 2023. ECF No. 71.

## LEGAL STANDARDS

To certify a class, Plaintiff is required to "satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b)." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Rule 23(a) sets forth the prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy for maintaining a class. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

**ARGUMENT**

I.     **REQUIREMENTS OF RULE 23(A) ARE SATISFIED**

    A.     <u>Plaintiff's Adequacy is Established</u>

While Defendant offers numerous reasons to support a showing that Plaintiff is inadequate as a class representative, none of its reasons are supported. Def. Opp. at 4-6.

First, Defendant asserts that Plaintiff's "felony alone is disqualifying." Def. Opp. at 5. Defendant states that Plaintiff is a felon based solely on a CourtNet record, which itself provides that it is "Not an Official Court Record." Described in more detail in Plaintiff's Declaration, this CourtNet record refers to a time during which Plaintiff was driving an Enterprise rental car, provided to him by his car dealership Zimmer Motors, while the dealership repaired Plaintiff's own vehicle. Exhibit A, Declaration of Charles Strow ("Strow Decl.").

At some point during this time, Enterprise reported the vehicle stolen, "[f]or reasons [Plaintiff] was never informed of." Strow Decl. at ¶ 11. Plaintiff "was offered the opportunity by authorities to quickly close the case and have the charge dropped to a misdemeanor provided [he] pay a fine, stay off Zimmer Motors' property and have no other offenses for two years." Strow Decl. at ¶ 16. Given that Plaintiff "fulfilled these conditions, [] it was [his] understanding this charge was not recorded as a felony, but a misdemeanor." Strow Decl. at ¶ 17. Furthermore, Plaintiff is "unaware of why the CourtNet record states 'Active Warrant of BENCH WARRANT on 5/13/2019.'" Strow Decl. at ¶ 18.

However, even if Plaintiff was a felon, "criminal convictions do not automatically disqualify a person from serving as a class representative." *Pruitt v. Personal Staffing Group, LLC*, No. 16-cv-5079, 2020 WL 3050330, at *9 (N.D. Ill. June 8, 2020); *see also Wood v. Capital One*

*Auto Finance, Inc.*, No. 06-cv-7, 2006 WL 6627680, at *3 (E.D. Wis. Sept. 19, 2006) ("[A] felony conviction does not necessarily preclude a person from serving as a class representative.").

Furthermore, Defendant ignores the fact that "there are hundreds of cases in this district alone where prisoners or pretrial detainees with criminal convictions have served as class representatives." *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 613 (N.D. Ill. 2009). In addition, "if convicted felons could not serve as class representatives, 'there would be no such thing as a class action in the prison or jail context.'" *Streeter*, 256 F.R.D. at 613 (citing *Parish v. Sheriff of Cook County*, No. 07-cv-4369, 2008 WL 4812875, at *5 (N.D. Ill. Oct. 24, 2008)).

Next, Defendant alleges that Plaintiff's deposition testimony demonstrates that he lacks credibility. Def. Opp. at 4-5.

While some courts in this district have found that credibility issues preclude a class representative's adequacy, others have found that "[c]redibility is not a requirement of a class representative, and whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative." *Lacy v. Dart*, No. 14-cv-6259, 2015 WL 1995576, at *5 (N.D. Ill. Apr. 30, 2015), *aff'd sub nom. Lacy v. Cook County, Illinois*, 897 F.3d 847 (7th Cir. 2018) (citing *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007)).

In those courts that do consider credibility, "a lack of credibility does not automatically render a named plaintiff inadequate." *Lacy*, 2015 WL 1995576, at *5. Rather, "such courts have generally found inadequacy only where the plaintiff's integrity is questioned on an issue that relates directly to a central part of the litigation." *Lacy*, 2015 WL 1995576, at *5.

Defendant alleges that Plaintiff "testified that he spoliated the most important piece of evidence in this case—the actual product he supposedly bought after talking to his lawyer," "testified that he was not injured," "testified that he bought the product with the new label on it,"

3

"he was recruited by his lawyer to sue B&G Foods," and "used the product for a year and a half beforehand, entirely satisfied with its taste and functionality." Def. Opp. at 4-5.

However, this distorts facts and narrowly reads Plaintiff's testimony. For example, Defendant claims that Plaintiff spoliated a piece of evidence with seemingly bad intentions, as if Plaintiff had not simply thrown out a product he no longer wished to use. Plaintiff himself said he "threw it out [because he doesn't] save cans." Exhibit B, Deposition Transcript of Plaintiff ("Strow Tr."), 65:24. Likewise, Defendant alleges that Plaintiff "used the product for a year and a half beforehand, entirely satisfied with its taste and functionality." Def. Opp. at 4-5. However, Plaintiff stated repeatedly that "

"It's not the product is bad. It's nothing to that effect. It's the whole purpose of misleading the ·labeling is what my issue is." 35:15-17.

Furthermore, Defendant continues to claim that Plaintiff "testified that he was not injured," citing to his testimony of "I didn't suffer a natural injury, no." Def. Opp. at 4; Strow Tr., 91:5. However, as the Court itself has stated previously, "that cherry-picked excerpt is not the whole story," given that "[e]arlier in the deposition, Plaintiff testified, 'I would have not bought this [product] at all if I would have known that it contained the oil and margarine that it says on the back.'" ECF No. 65. As such, "[t]hat pocketbook injury is an injury−in−fact." ECF No. 65.

Defendant also claims that "Plaintiff is not in control of this case." Def. Opp. at 6. However, Plaintiff has shown through his testimony that he is thoroughly engaged with the case. As Plaintiff has previously stated, he seeks to be the class representative "to represent others to take a stance against the misleading and mislabeling of products" and because "[he] want[s] the labeling [of the Product] to be correct to quit misleading people." Strow Tr., 50:21-22; 32:14-15.

Furthermore, Plaintiff does not put himself above anyone else and "the only reason [he's] doing [this]" is "[t]o be able to represent not [himself] but everybody else that has bought [the Product] and been misled as well." Strow Tr., 51:11-13.

B.      Plaintiff's Counsel is Adequate

Though Defendant focuses on what it describes as violations of rules of professional conduct in arguing for the inadequacy of Plaintiff's Counsel, "only the most egregious misconduct by plaintiffs' lawyers justifies the denial of class status under Rule 23(a)(4)." Def. Opp. at 7; *Feldman v. Motorola, Inc.*, No. 90-cv-5887, 1992 WL 415382, at *7 (N.D. Ill. Nov. 5, 1992) citing *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir.1972).

Courts considering similar questions have "doubt[ed] that [a violation of Rule 7.3(c)] qualifies as the 'most egregious misconduct' so as to require denial of class certification." *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 494 (7th Cir. 2013) (affirming district court decision where it was alleged plaintiff's counsel "may have violated professional responsibility provisions in various states that require such letter to be registered prior to being sent.") quoting *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09-cv-3963, 2011 WL 3273078, at *7 (N.D. Ill. July 27, 2011).

C.      Ascertainability, Typicality, and Numerosity are Established

Defendant claims that Plaintiff has not proven that the proposed class is ascertainable, and, for the same reasons, has failed to show that his claims are typical. Def. Opp at 8-10.

Defendant alleges that the proposed class is not ascertainable, given that "Plaintiff has not proven that any proposed class member suffered 'actual damages' that were 'proximately caused by the [alleged] deception,'" and the proposed class would include members who were not injured or deceived. Def. Opp. at 10. However, Plaintiff, and others like him, suffered a "pocketbook

5

injury," given that "'[he] would have not bought this [product] at all if [he] would have known that it contained the oil and margarine that it says on the back,'" and he "forked over money that otherwise would have remained in his pocket." ECF No. 65. In addition, a post-judgment claims process using a notice and claim process could be designed and implemented to reach the majority of class members who were injured by Defendant's deception.

The typicality requirement is satisfied because "the claims or defenses of [Plaintiff] are typical of the claims or defenses of the class." *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting Fed. R. Civ. P. 23(a)(3)). Furthermore, "[t]ypical does not mean identical and the typicality requirement is liberally construed." *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004).

In addition, typicality "requires neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). Therefore, "individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018); *De La Fuente*, 713 F.2d at 232; *Smith v. Nike Retail Services, Inc.*, 234 F.R.D. 648, 660 (N.D. Ill. 2006).

Plaintiff's claims are typical of all other class members' claims because all products were labeled "Butter – No-Stick Spray." Even if there are minor differences in the specific purchase experience of Plaintiff and class members, these would not defeat typicality.

Typicality is met as Plaintiff and the proposed class assert exactly the same consumer fraud claim which arises from the same course of conduct, the statement "Butter – No-Stick Spray" on every form of its non-stick cooking spray represented as containing butter. This led to Plaintiff's and each class member's purchase and subsequent economic injury.

6

As Plaintiff stated in his deposition:

> [the labeling] is very misleading in [his] opinion because the front of the can does not match what the back of the can says. The can on the front has a large picture. It's a large butter picture and it says largely butter. On the back of the can in little tiny writing is completely opposite of what the front of the can is portraying.

Strow Tr., 32:6-13.

Because the Product "said butter on it [and had] the picture and the word butter," Plaintiff "took it wholeheartedly that it was butter in the product." Strow Tr., 15:5-9. As such, "when [he] saw that it was butter, [he] took it that it was actually butter. [He] actually thought it was butter in a can." Strow Tr., 27:6-8.

Finally, Defendant claims that Plaintiff has not proven numerosity. Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. A plaintiff need not show the precise number of class members, and as few as 40 members render joinder impracticable. *See Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020).

Numerosity is satisfied, given that it is not disputed that B&G sold tens of thousands of units during the class period through third-parties including grocery stores, big box stores, wholesale clubs and online retailers in the States covered by the proposed classes.

## II. REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

### A. Common Questions Predominate

Defendant alleges that individualized issues predominate. Pursuant to Rule 23(b)(3), "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members."

However, "[n]either Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common [because] [i]t is routine in class actions to have a final phase in

which individualized proof must be submitted." *Suchanek*, 764 F.3d at 756 (emphasis in original).

Furthermore, "[t]he Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Suchanek*, 764 F.3d at 755 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

For common questions to predominate and satisfy the Rule 23(b) requirement, "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000).

As such, "where a defendant is alleged to have acted wrongfully in the same basic manner towards an entire class," predominance is satisfied. *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 520 (N.D. Ill. 2008) (citing *P.J.'s Concrete Pumping Serv., Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d 992, 1003 (2004)). Further, "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class" *Bell v. PNC Bank Nat'l Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015).

While a plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members," the rule "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [his] claim [is] susceptible to classwide proof.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Fund*, 568 U.S. 455, 459, 467-68 (2013). In part for this reason, "predominance is a test readily met in certain cases alleging consumer [] fraud." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

Common questions predominate because "a class-wide proceeding [will] generate common *answers* apt to drive the resolution of the litigation" about whether "Butter – No-Stick

8

Spray" was deceptive and whether reasonable consumers were misled. *See Wal-Mart*, 564 U.S. at 350 (emphasis in original).

If each class member were to pursue his or her claim individually, the evidence to support those individual claims would be identical. However, even if not identical, no individualized issues will defeat predominance because all members of the Class need not have been exposed to each representation. No such inquiry is warranted here, as B&G communicated the same statement, "Butter – No-Stick Spray" to all class members, at all times, on the Product.

The "single, central, common issue of liability [is] whether ['Butter – No-Stick Spray' was deceptive and misleading]." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Plaintiff will show that describing the Product as "Butter – No-Stick Spray" claim is material to the "reasonable consumer," even though "[a] plaintiff is not required [] 'to prove materiality at the class certification stage.'" *Ploss as Tr. for Harry Ploss Tr. DTD 8/16/1993 v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1013 (N.D. Ill. 2020) (citing *Amgen*, 568 U.S. at 468).

This also means that Plaintiff "need not, at that threshold, prove that the predominating question will be answered in [his] favor." *Ploss*, 431 F. Supp. 3d at 1013. Furthermore, "[b]ecause materiality is judged according to an objective standard, the materiality of [Defendant's] alleged misrepresentations and omissions is a question common to all members of the class [Plainitff] would represent." *Amgen*, 568 U.S. at 459.

B. <u>Class-Wide Injury and Viable Damages Methodology Exists</u>

Defendant claims that the Matthews Declaration does not prove class-wide injury and that Plaintiff has not proven a viable method exists for asserting class-wide damages.

However, "[p]rice-premium damages calculations based on conjoint analysis designed to isolate the portion of the payment attributable to a misrepresented product feature have been

9

accepted by several courts" in this Circuit. *Benson v. Newell Brands, Inc.*, No. 19-cv-6836, 2021 WL 5321510, at *5 (N.D. Ill. Nov. 16, 2021).

Furthermore, "[a] damages calculation that reflects the difference between the market price of the product as represented and as delivered is neither novel nor problematic from a class certification perspective." *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017).

Though Defendant argues that "how much anyone would be willing to pay is an individualized issue," Plaintiff has described how "to measure the amount that consumers would be willing to pay for butter flavored non-stick cooking spray that they believed contained butter, compared to those that did not contain butter." Def. Opp. at 15; ECF No. 60-4, Declaration of Andrea Lynn Matthews ("Matthews Decl."), at ¶¶ 166-190.

Nevertheless, "the fact that damages may be individualized in this case would not preclude certification." *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015) (citing *Butler*, 727 F.3d at 801).

The measure of each class member's damages is the amount of "price premium" inherent in the non-stick cooking spray that class members purchased that corresponds to Defendant's "Butter – No-Stick Spray" marketing claim.

Consumers are unable to individually negotiate the price they paid to purchase non-stick cooking spray from retailers. The price of non-stick cooking spray is determined collectively in the marketplace, and not by any one individual class member. Therefore, class members cannot discount the amounts attributable to the "Butter – No-Stick Spray" claim, and all consumers pay the same amount for the attribute, regardless of how they value the attribute.

Even though retail prices of non-stick cooking spray varied during the course of the class

period, certification of a damages class is still appropriate because "[c]alculating a price premium can be as simple as computing the difference between the cost of the second best product in the product class (without a deceiving label) and the cost of the [P]roduct at issue (with the [challenged] label)."*Mednick v. Precor, Inc.*, 320 F.R.D. 140, 156 (N.D. Ill. 2017) citing *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 394 (S.D.N.Y. 2016)). As such, "[t]he Price Premium 'measures the extent to which all Class Members overpaid because of the extent to which Defendant[] could inflate [its] market price due to the Challenged Claims.'" *Benson*, 2021 WL 5321510, at *4.

Plaintiff's Expert Report identified "conjoint analysis" and "hedonic pricing" as tools capable of measuring the value of the "Butter – No-Stick Spray" marketing attribute as a part of the total retail price of the Product. Matthews Decl. at ¶¶ 166-190.

Common sense, confirmed by the Expert Report, shows that "over seventy percent of the target market for Defendant's Product believes that Crisco Butter No-Stick Spray contains butter." Matthews Decl. at ¶ 161.

Demonstrating the existence of a viable damages model that makes use of common, class-wide evidence is all that is required, because "[w]hether the damages model is accurate [. . .] is a question that will be determined by a finder of fact." *Eike v. Allergan, Inc.*, No. 12-cv-1141, 2016 WL 4272127, at *6 (S.D. Ill. Aug. 15, 2016), *vacated and remanded,* 850 F.3d 315 (7th Cir. 2017).[1]

These techniques do not require any individual inquiry and can produce class-wide results using common evidence. Indeed, regression analysis has been found sufficient to satisfy Rule

---

[1] *Eike v. Allergan, Inc.* was vacated and remanded because class members had no standing to sue, given the lack of an actionable injury.

23(b)(3) and *Comcast* in other cases involving false and deceptive claims. *See Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-1831, 2014 WL 2466559, at *17 (N.D. Cal. May 30, 2014) (finding that the "Regression Model isolates the effect of the alleged misrepresentation by controlling for all other factors that may affect the price" and thus satisfies *Comcast*); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-2724, 2014 WL 2191901, at *26 (N.D. Cal. May 23, 2014) (finding that a regression model is "sufficient under *Comcast*" because it is a "means of showing damages on a classwide basis," even if it may be subject to attack at trial).

A regression model satisfies *Comcast* because "[it] ensures that factors like brand loyalty and product quality remain constant. It also controls for variables such as [Defendant]'s advertising expenditures, the prices of competing and complementary products, the disposable income of consumers, and population." *Brazil*, 2014 WL 2466559, at *17.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification.

Dated: August 15, 2023

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

## Certificate of Service

I certify that on August 15, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan