# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Charles Strow, individually and on behalf of all others similarly situated, | 1:21-cv-05104 |
| Plaintiff, | Hon. Steven C. Seeger |
| - against - | |
| B&G Foods, Inc., | |
| Defendant | |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Exclude Expert Declaration

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

LEGAL STANDARDS .................................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

I.     METHODOLOGIES USED WERE RELIABLE ............................................... 3

II.    EXPERT REPORT ADDRESSED MAIN ISSUE ABOUT PRESENCE OF BUTTER ............................................................................................................... 7

III.   RELIABLE FOUNDATION SUPPORTS DENIAL OF MOTION ................... 8

IV.   DAMAGE MODELS CONSISTENT WITH *COMCAST* ................................. 9

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .................................................................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ........................................................................................... 2, 3, 8

*Davis v. Duran*,
  277 F.R.D. 362 (N.D. Ill. 2011) ................................................................................. 8

*Eike v. Allergan, Inc.*,
  850 F.3d 315 (7th Cir. 2017) ...................................................................................... 9

*Eike v. Allergan, Inc.*,
  No. 12-cv-1141, 2016 WL 4272127 (S.D. Ill. Aug. 15, 2016) ................................... 9

*Ernst v. City of Chicago*,
  39 F. Supp. 3d 1005 (N.D. Ill. 2014) ......................................................................... 2

*In re Scotts EZ Seed Litigation*,
  No. 12-cv-4727, 2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) ................................... 2

*Kumho Tire v. Carmichael*,
  526 U.S. 137 (1999) .................................................................................................... 2

*Lapsley v. Xtek, Inc.*,
  689 F.3d 802 (7th Cir. 2012) .................................................................................. 2, 3

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
  372 F. Supp. 2d 1104 (N.D. Ill. 2005) ........................................................................ 8

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995) ........................................................................................ 2

*Nat. Res. Def. Council v. Illinois Power Res. Generating, LLC*,
  No. 13-cv-1181, 2018 WL 5777476 (C.D. Ill. Nov. 2, 2018) .................................... 8

*Newsome v. McCabe*,
  319 F.3d 301 (7th Cir. 2003) ...................................................................................... 7

*PBM Prod., LLC v. Mead Johnson & Co.*,
  639 F.3d 111 (4th Cir. 2011) ...................................................................................... 6

*Restivo v. Hessemann*,
  846 F.3d 547 (2d Cir. 2017) ........................................................................................ 8

*Sanders v. City of Chicago Heights*,
    No. 13-cv-0221, 2016 WL 4398011 (N.D. Ill. Aug. 18, 2016) ................................................ 7

*Smith v. Ford Motor Co.*,
    215 F.3d 713 (7th Cir. 2000) ................................................................................................... 7

*Stollings v. Ryobi Techs., Inc.*,
    725 F.3d 753 (7th Cir. 2013) ................................................................................................... 8

*Strow v. B&G Foods, Inc.*,
     No. 21-cv-5104, 2022 WL 4608948 (N.D. Ill. Sept. 30, 2022) ............................................... 1

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) ...................................................................................... 6, 7, 9

*Thoip v. Walt Disney Co.*,
    690 F. Supp. 2d 218 (S.D.N.Y. 2010) ..................................................................................... 6

*United States v. Finch*,
    630 F.3d 1057 (8th Cir. 2011) ................................................................................................. 8

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
    571 F.3d 206 (2d Cir. 2009) .................................................................................................... 8

**Rules**

Federal Rule of Evidence 702 .......................................................................................................... 2, 8

Federal Rule of Evidence 702(a) ......................................................................................................... 2

**Treatises**

McCarthy on Trademarks and Unfair Competition (5th ed. 2017) ................................................... 6

Mike Rappeport, *Response to Survey Methodology Articles*,
    96 Trademark Rep. 769 (2006) ............................................................................................... 7

Shari Seidman Diamond, *Reference Guide on Survey Research*,
    *in* Fed. Judicial Ctr*., Reference Manual on Scientific Evidence* (3d ed. 2011)). ....................... 7

## INTRODUCTION

Plaintiff Charles Strow ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by B&G Foods, Inc. ("Defendant" or "B&G Foods") to Exclude the Declaration of Andrea Matthews. ECF No. 73, Defendant's Memorandum in Support of Defendant's Motion to Exclude the Declaration of Andrea Matthews, Ph.D. ("Def. Mem.").

## FACTUAL BACKGROUND

Plaintiff filed this action on September 27, 2021, alleging that the representation "Butter – No-Stick Spray" was "misleading because the Product does not contain any butter, as shown on the ingredient list." Complaint, ECF No. 1 at ¶ 27. Subsequently, the First Amended Complaint ("FAC") was filed on November 12, 2021.

Following Defendant's Motion seeking dismissal, filed on February 10, 2022, the Court denied the "motion to dismiss the complaint based on the argument that the complaint did not meet the plausibility standard" and permitted all of Plaintiff's claims to proceed, because "[Plaintiff's] reading [of the Product's label] is not so implausible that it fails to state a claim." *Strow v. B&G Foods, Inc.*, No. 21-cv-5104, 2022 WL 4608948, at *10 (N.D. Ill. Sept. 30, 2022).

Defendant's Second Motion to Dismiss, filed on February 8, 2023, was also denied in its entirety. ECF No. 69.

Plaintiff filed his Motion for Class Certification on May 26, 2023, supported by the Declaration of Andrea Matthews. ECF Nos. 60, 60-4 ("Matthews Decl."). Defendant filed its Opposition and Motion to Exclude the Declaration of Andrea Matthews on August 1, 2023. ECF Nos. 71-73. In response, Plaintiff filed his Reply to Defendant's Opposition on August 15, 2020. ECF No. 75.

**LEGAL STANDARDS**

Expert testimony must meet the three requirements of Federal Rule of Evidence 702: qualifications, reliability, and relevance. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). An expert must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expert's testimony must also have a "reliable foundation." *Daubert*, 509 U.S. at 580. Though particular factors may be considered, "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999). Finally, expert testimony must be relevant by "help[ing] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Nonetheless, "[e]ven in light of *Daubert* and its progeny, exclusion of expert testimony remains the exception rather than the rule." *In re Scotts EZ Seed Litigation*, No. 12-cv-4727, 2017 WL 3396433, at *7 (S.D.N.Y. Aug. 8, 2017). Furthermore, "trial judges acting as gatekeepers [under Rule 702] do not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul' that would 'inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury.'" *Ernst v. City of Chicago*, 39 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014) (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1045 (2d Cir. 1995)).

In other words, "[a] *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). Thus, "[i]f the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with

2

the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (citing *Daubert*, 509 U.S. at 596).

## ARGUMENT

### I. METHODOLOGIES USED WERE RELIABLE

Defendant's attempt to challenge the reliability of Dr. Matthew's methodologies fails for several reasons. Def. Mem. at 11-12.

First, the assertion that respondents were improperly primed with a "distractor task" evinces a lack of knowledge of how surveys are carried out. Def. Mem. at 11. The Matthews Declaration correctly stated that "Distractor tasks are commonly used in experimental research to ensure that respondents give unbiased answers to the experimental questions." Matthews Decl. ¶ 126 citing Allen, Mike (2017), Sage Encyclopedia of Communication Research Methods: SAGE.

The use of distractor tasks "is based, at times, on the need to avoid biased responses by participants." Allen at 360, "Deception in Research." Without such distractor tasks, "participants [may] identify[] the true nature of the hypotheses being tested [and] may alter their behavior in response to what they perceive as the experimenter's expectations instead of responding naturally based on what they are experiencing."

The distractor task came after selecting "individuals who indicated that they had purchased 'Non-stick cooking spray (e.g. Pam, vegetable oil spray, olive oil spray)' in the last 12 months," because they were "in the target population for the study." Matthews Decl. ¶ 124.

That its focus on bacon and olive oil improperly "primed" survey participants to focus on flavor is incorrect, because distractors "should be realistic," yet not draw attention to what the researcher seeks to test.[1]

While Defendant contends the distractor "taught participants to focus on flavor before answering the real survey questions about 'butter flavor,'" this case – and the survey questions – are about the "Presence of Butter." Def. Mem. at 10; Matthews Decl. ¶ 129.

Plaintiff never alleged being misled by the absence of "butter flavor," but filed this lawsuit because "the Product contains no butter." Am. Compl. ¶ 3.

Though the survey included multiple choice questions where "butter" and "butter flavor" could be selected, the issues tested are those central to this case because one version "contain[ed] butter, [while the other] d[id] not contain butter, but instead contain[ed] artificial butter flavoring." Matthews Decl. ¶ 142.

The argument that the survey "used improper stimulus" because "the image in Condition 1 is not an accurate depiction of the product" ignores the seminal work of Moskowitz, who "demonstrated the effect of branding on the perception of overall acceptability and several other sensory attributes; ratings went up or down depending on product brands." Gacula Jr, M. C., et al., "*Some sources of bias in consumer testing*," Journal of Sensory Studies 1.2 (1986): 175-182 citing H.R. Moskowitz, Product Testing and Sensory Evaluation of Foods, Food and Nutrition Press, Westport, CT (1983).

That the expert report used "a fictional control brand of no-stick spray ('First Choice' brand) to assess any unique impact of the Crisco brand on consumer perceptions of whether or not

---

[1] Kathryn Whitenton, How to use Screening Questions to Select the Right Participants for User Research
Summary: To recruit appropriate UX research participants, assess people's characteristics without giving away the purpose of the study, Nielsen Norman Group, July 14, 2019.

4

the spray contained butter," was consistent with industry standard practices, where "extraneous factors that may affect the testing of the hypotheses should be discounted by the proper use of experimental design." Matthews Decl. ¶ 55; Gacula Jr, M. C., at 181 (comparing consumer products including national brands and "blind" or fictional and control brands).

Defendant's assertion that "the call-out that Dr. Matthews showed participants in her Experiment 1, Condition 1 contains different language than what appeared on the actual product" is technically true, but considering the difficulty of reading the actual label, and no distinction between "naturally & artificially flavored" compared to "natural & artificial flavor," it is meaningless.



In contrast to how one court found it "very likely that source information would have diminished confusion not only as to source but also as to association and permission" because "Labels…serve as important sources of information," there is no material or practical difference

5

between the statements, "naturally & artificially flavored" and "natural & artificial flavor." Def. Mem. at 12 citing *Thoip v. Walt Disney Co.*, 690 F. Supp. 2d 218, 238-39 (S.D.N.Y. 2010).

Defendant's focus on the font and phrasing related to the Product's flavor distracts from the central issue,

The objection that the image shows to participants "artificially draws attention to one isolated portion of the label that is focal for the case 'Naturally & Artificially Flavored,'" is mistaken, because the central issue is "that the Defendant's Product does not contain butter." Def. Mem. at 12; Matthews Decl. ¶ 135.

That survey participants did not "examine the entire label" was entirely proper, because this was consistent with Plaintiff's purchase experience, and the theory advanced in Plaintiff's Motion for Class Certification.

However, even if each of these allegations were true, "[t]he majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence." 6 McCarthy on Trademarks and Unfair Competition § 32:170 (5th ed. 2017).

In addition, "[w]hile there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare" and "[u]sually, objections based on flaws in the survey's methodology are properly addressed by the trier of fact." *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 246 (S.D. Ill. 2015) (citing *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011)) (internal edits omitted).

Nonetheless, "the study is not inadmissible [even if Dr. Matthew allegedly] failed to replicate real-world [or marketplace] conditions," because "[f]or statements on packages ... frequently it is proper to 'focus' the respondent on that aspect or aspects of the product packaging

6

... the plaintiff thinks is offending." *Suchanek*, 311 F.R.D. at 247-48 (citing Mike Rappeport, *Response to Survey Methodology Articles*, 96 Trademark Rep. 769, 774-75 (2006)).

This "approach is certainly used by other experts in conducting consumer surveys," demonstrated by the fact that "[s]ome surveys attempt to reduce the impact of preexisting impressions on respondent's answers by ... direct[ing] respondent's attention to the mark at issue (e.g., 'these stripes on the package'), [even if s]uch efforts are likely to be only partially successful." *Suchanek*, 311 F.R.D. at 247 (citing Shari Seidman Diamond, *Reference Guide on Survey Research*, *in* Fed. Judicial Ctr., Reference Manual on Scientific Evidence, p. 364 (3d ed. 2011)).

## II.  EXPERT REPORT ADDRESSED MAIN ISSUE ABOUT PRESENCE OF BUTTER

Defendant claims that Dr. Matthew's survey is not useful, because (1) it "does not shed any light on whether having the unmodified phrase 'butter no-stick spray' affects consumer behavior," (2) it "does not answer any question in this case because even if the results were valid, they would not show whether any consumer was purportedly materially misled," and (3) Dr. Matthew's "avoided asking the salient question in this case." Def. Mem. at 12-13.

However, she asked "the salient question," which was "the likelihood of believing that the Product contained butter." Matthews Decl. ¶ 48. Moreover, "expert 'testimony need not prove everything in order to be useful.'" *Sanders v. City of Chicago Heights*, No. 13-cv-0221, 2016 WL 4398011, at *10 (N.D. Ill. Aug. 18, 2016) (citing *Newsome v. McCabe*, 319 F.3d 301, 306 (7th Cir. 2003)). In addition, "'[t]he expert need not have an opinion on the ultimate question to be resolved by the trier of fact [] in order to' assist the trier of fact." *Sanders*, 2016 WL 4398011, at *10 (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

7

Therefore, '[a]bsent strong factors favoring exclusion, '[d]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Davis v. Duran*, 277 F.R.D. 362, 366 (N.D. Ill. 2011) (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)).

### III. RELIABLE FOUNDATION SUPPORTS DENIAL OF MOTION

Defendant alleges that Dr. Matthew's opinions "lack a reliable foundation," because "the only thing [she] reviewed prior to preparing her survey and report was the Complaint." Def. Mem. at 13. That Dr. Matthews did not review other materials or reviewed Plaintiff's deposition is irrelevant, because the Complaint is the basis for Plaintiff's allegations.

Again, "questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005).

While "an expert's assumptions can [] be so speculative as to warrant exclusion of testimony under Rule 702 and *Daubert*," the underlying assumptions of the Matthews Report "are [not] so unrealistic and contradictory as to suggest bad faith." *Nat. Res. Def. Council v. Illinois Power Res. Generating, LLC*, No. 13-cv-1181, 2018 WL 5777476, at *4 (C.D. Ill. Nov. 2, 2018) (quoting *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009))).

The Court should follow the Seventh Circuit's guidance that a "judge should [] let the jury determine how any uncertainty about an [expert's assumptions and methodology] affected the weight of [his or her] testimony," because Defendant is "free to use cross-examination to attack the assumption[s] and to ask [the expert] how altering the assumption[s] would affect his [or her] analysis." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 767 (7th Cir. 2013).

8

Hence, "[t]o the extent that Defendant[] want[s] to quibble with [Dr. Matthew's] understanding of the facts or the materials that [s]he [has or has not] reviewed, those are matters for cross-examination because they go more to the weight and credibility of [her] opinions, rather than their admissibility." *Suchanek*, 311 F.R.D. at 245.

## IV. DAMAGE MODELS CONSISTENT WITH *COMCAST*

Defendant believes that the "conjoint [and] hedonic analysis [damages models] should [] be excluded because they are not opinions, but rather a description of what these analyses are without any explanation of how [Dr. Matthew's] would try to validly structure them in this case." Def. Mem. at 14.

However, demonstrating the existence of a viable damages model that makes use of common, class-wide evidence is consistent with *Comcast*, and all that is required, because "[w]hether the damages model is accurate [. . .] is a question that will be determined by a finder of fact." *Eike v. Allergan, Inc.*, No. 12-cv-1141, 2016 WL 4272127, at *6 (S.D. Ill. Aug. 15, 2016), *vacated and remanded,* 850 F.3d 315 (7th Cir. 2017);[2] *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

### CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated: August 19, 2023

                                                                            Respectfully submitted,

                                                                            /s/Spencer Sheehan
                                                                            Sheehan & Associates, P.C.
                                                                            60 Cuttermill Rd Ste 409
                                                                            Great Neck NY 11021
                                                                             (516) 268-7080

---

[2] *Eike v. Allergan, Inc.* was vacated and remanded because class members had no standing to sue, given the lack of an actionable injury.

9

spencer@spencersheehan.com

**Certificate of Service**

I certify that on August 19, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan